815 So.2d 50 (2002)
STATE of Louisiana
v.
Steve M. MARCANTEL.
No. 2000-KO-1629.
Supreme Court of Louisiana.
April 3, 2002.
Rehearing Denied May 24, 2002.
*51 Ramona F. Almonte, New Orleans, Deborah M. Snead, Counsel for Applicant.
Steve M. Marcantel, pro se.
Richard P. Ieyoub, Attorney General, Brent C. Coreil, District Attorney, Anthony L. Walker, Mamou, Counsel for Respondent.
WEIMER, Justice.
This matter concerns the defendant's conviction of one count of theft, in violation of LSA-R.S. 14:67, and seven counts of possession of a firearm by a convicted felon, in violation of LSA-R.S. 14:95.1. We granted this writ for the principal purpose of addressing the sufficiency of the evidence *52 of theft, including the presumption concerning stolen property as set forth in LSA-R.S. 15:432 and the effect of the presumption, if any, on the sufficiency of the evidence.

FACTS
On Sunday, May 11, 1997, Cecil and Virgie Prejean returned from a camping trip to find their home in Mamou, Louisiana, had been burglarized. The couple notified police and reported four rifles, three handguns, and some jewelry were missing. An investigation ensued, which eventually led to the arrest and charging of Steve M. Marcantel. On August 17, 1998, he was tried on the theft and firearms charges as well as one count of simple burglary. The jury returned a verdict acquitting Marcantel of the burglary charge, but convicting him of the other charges.
At trial, the State called a total of nine witnesses. R.B. Fontenot, David Monier, and Rudy Guillory were called in connection with the firearms charges, to prove the predicate convictions. Fontenot testified Marcantel was convicted of simple burglary of a pharmacy in 1983, that he was Marcantel's probation officer in 1983, and that he had previously fingerprinted Marcantel in connection with the 1983 charges. Monier testified that in 1990 he was a probation officer who conducted a post-sentence investigation on Marcantel for a second degree battery conviction, which apparently took place after the 1983 burglary. Guillory, an expert in the field of fingerprints, compared the fingerprints of the defendant with the fingerprint card taken in connection with defendant's conviction for the burglary of the pharmacy; he testified they matched.
The remainder of the State's witnesses were called in connection with the burglary and theft charges. Cecil Prejean testified that when he and his wife returned from the camping trip, they noticed that seven guns and some jewelry were missing from their home. The stolen firearms were recovered by the Mamou police, but had sustained extensive damage. The missing guns were: Browning 30-06 rifle, Remington Model 742 .243 caliber rifle, Remington 742 rifle 30-06 caliber, 30-30 caliber pump action rifle, Beretta .25 caliber semi-automatic handgun, Smith & Wesson .38 caliber police special handgun, and a Ruger .357 caliber Blackhawk handgun.
Mr. Prejean identified the defendant as his first cousin, who had been to his house several times in the past. On the weekend of the Prejeans' camping trip, Mr. Prejean had told defendant's father, with whom defendant lived, about the trip. Further testimony by Mr. Prejean was that a chrome .25 caliber semi-automatic pistol, without a clip, which had been given to him by defendant's father, was not taken in the burglary, although it was very visible next to the jewelry box that had contained the missing jewelry. Mr. Prejean also stated on cross-examination that he had other shotguns in the house that were not stolen, but the chrome pistol was the only handgun that was not taken. Mr. Prejean estimated the value of the stolen items as more than $7,000.00.
Virgie Prejean confirmed her husband's testimony about the missing guns and jewelry. She testified the .32 snub nose pistol was kept loaded. She also stated that two pillow cases had been taken by the intruder.
Todd Ortis was the police officer who investigated the report of the burglary at the Prejean residence. No fingerprints were found at the residence. A few months after the burglary, the .25 caliber Beretta was voluntarily surrendered to police by Roger Spell, who stated he had *53 obtained it from Todd Deshotel. Officer Ortis testified Deshotel was interrogated and informed police he had obtained the guns from Marcantel. Ortis said he also recovered a 30-06 rifle, a Ruger .357 Magnum handgun, and a 30-30 pump rifle. The firearms were not recovered until several months after the burglary. The officer stated fingerprint tests performed on the weapons recovered did not produce any prints. He admitted Deshotel told him Marcantel did not break into the Prejean home.
Todd Deshotel testified that in May or June 1997, Marcantel visited his house, asked for a ride, and directed him to a country road. Deshotel said Marcantel left the truck and retrieved a bundle from the woods. The bundle contained pistols and rifles and was wrapped in linen. They then went to Mark McCauley's residence in Pine Prairie and showed him the guns.
Deshotel testified he got three guns and some jewelry from Marcantel. He said he threw the jewelry away because he could not sell it. The guns were a 30-06 Browning rifle, a Smith & Wesson .38 caliber handgun, and a Beretta .25 caliber automatic handgun. Deshotel sold the weapons to Scotty Fournet, Roger Spell, and another person he could not identify. Deshotel did not report these stolen items to the police, but when questioned, he admitted he sold the guns.
On cross-examination, Deshotel said he told the police he was drinking and taking a sedative at the time he obtained the guns. He said he did not realize the situation until a few days later when he became afraid and got rid of the guns. Deshotel admitted to abusing alcohol and prescription medication at the time these events occurred. He had since been through rehabilitation. He also admitted to being convicted of a misdemeanorcriminal mischief in the 1970s; he was never convicted of a felony. Deshotel said he was not sure if his girlfriend, Rebecca Dupre, was in the car with him and Marcantel on the day the guns were retrieved.
Rebecca Dupre testified Marcantel visited the house where she and her boyfriend, Todd Deshotel, were living about a week or two before the couple broke up their relationship. Marcantel's visit was in May of 1997, sometime after May 15. When Marcantel asked Deshotel to give him a ride, the three of them got into the car. Marcantel directed Deshotel to drive down a country road and stop at a particular location. Marcantel got out of the car, walked into a bushy area, retrieved a bundle, and put it in the trunk. Dupre stated that at some point Deshotel stopped the car, and Marcantel retrieved the bundle from the trunk. She noticed the bundle looked like a pillow case tied with a cord and it had guns inside. Dupre further testified the three of them went to Mark McCauley's residence where she stayed with McCauley's children while the men left. She did not see an exchange of the weapons. When Marcantel and Deshotel returned to pick her up, the three of them went down a country road where the two men stashed some of the guns along the side of the road. Dupre testified the recovered weapons were similar to the ones Marcantel retrieved from the woods, and she specifically recognized the Beretta handgun. She stated that neither she nor Deshotel had anything to do with the burglary of the Prejean house.
Although Dupre stated she was drinking beer on the day of Marcantel visit, she had a clear recollection of what transpired. Dupre had no criminal record and she cooperated with police when she was questioned. She testified she had not been charged with anything in connection with the guns. However, she admitted during cross-examination that she did not give a *54 full and true statement to the police. She said she was going along with the other's stories when she lied and said they picked up the bundle and returned home with it. She did not tell the police about going to McCauley's residence. Dupre admitted Deshotel was having a drug and alcohol problem, including memory loss, and that he was very heavily drugged at the time of the incident with Marcantel.
Mark McCauley confirmed that Dupre, Deshotel and Marcantel visited his residence in May or June 1997. On cross-examination he admitted he did not tell the police in his statement that they had come there with guns. McCauley testified Marcantel threw a loaded .32 snub nose pistol to him as he was sitting on the couch. This action alarmed him as his children were in the room. McCauley testified he bought three rifles from Marcantel that day, a Remington 30-06, a Remington .243, and a 30-30 pump. He identified all seven of the recovered guns as the ones Marcantel had in his possession. Marcantel later returned to McCauley's residence and sold him a .357 magnum handgun. Even later, McCauley got a Ruger 9mm from Marcantel, but gave it back to him a few days later.[1] McCauley testified he cooperated with police and retrieved the guns he had sold or given away. He admitted he suspected the guns were stolen from Texas. When he went into drug rehabilitation, he gave the remaining guns to Reynard Sebastien and told him he got them from Marcantel. McCauley was not charged with receiving stolen goods. At the time of trial, McCauley was incarcerated for failure to pay child support. His record also included four prior DWI convictions.
James R. Sebastian testified he is a probation officer who was a former neighbor of McCauley. He confirmed that McCauley gave him two 30-06 rifles and a 30-30 pump rifle to sell because he was going into rehabilitation. Sebastian said he later learned the guns were stolen and turned them over to police. Sebastian testified he did not know where the guns came from.
After the guilty verdict was returned, counsel for defendant filed a motion for new trial pursuant to LSA-C.Cr. P. art. 851 alleging that the verdict was contrary to the law and the evidence; the court's ruling on a written motion or an objection made during the proceedings showed prejudicial error; the defendant had discovered since the verdict a "prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict"; and the ends of justice would best be served by granting a new trial. The motion for new trial was denied by the trial court.
The trial court sentenced Marcantel to serve 10 years at hard labor for the felony theft charge and 15 years for the possession of a firearm charges. The seven possession of firearm charges were to run concurrently with each other and consecutively with the sentence for theft. The convictions and sentences and the denial of the motion for new trial were appealed to the Court of Appeal, Third Circuit.
In an unpublished opinion, State v. Marcantel, 99-1091 (La.App. 3 Cir. 3/1/00), 771 So.2d 326, the court of appeal affirmed the theft conviction. The court deferred ruling on the denial of the motion for new trial on counts Nine and Ten of the firearm charges due to newly discovered evidence. The matter was remanded to the *55 trial court for an evidentiary hearing to complete the record regarding the contents of a missing letter from Mark McCauley that was introduced into evidence at the hearing on the motion for new trial, but was missing from the record on appeal. The appellate court ordered the trial court to supplement the record with a transcript of the hearing and to relodge it after the hearing. The remaining five counts of possession of a firearm by a felon were affirmed. Because the trial court did not observe the proper delay between denial of the motion for new trial and sentencing, the defendant's sentences were vacated and the matter remanded for re-sentencing.
Defendant then filed a pro se writ application with this court. The defendant's writ application was granted and the Loyola University Law Clinic was appointed to represent him. In addition to the brief filed by the clinic on defendant's behalf, defendant filed a pro se brief with this court.
Seven errors were assigned on defendant's behalf:
1. The State failed to disclose, prior to trial and in accordance to well established case law and in violation of the Fourteenth Amendment, the existence of exculpatory evidence in the form of an agreement not to prosecute certain key witnessesRebecca Dupre, Todd Deshotel and Mark McCauleyin exchange for their cooperation, help, and testimony against Petitioner.
2. The trial court improperly restricted the cross-examination of key prosecution witness Mark McCauley as to prior arrests, deals or promises, which may have unduly influenced the witness' testimony and established bias and interests on the part of the witness in violation of defendant's Sixth Amendment right to confront and cross-examine his accusers.
3. The State made highly inflammatory and prejudicial remarks in closing argument, and used prior-conviction evidence, admissible only to show a requisite element of R.S. 14:95.1, as propensity and bad character evidence.
4. The trial court failed to charge the jury that defendant's prior convictions were introduced for the limited purpose of showing the requisite element of R.S. 14:95.1.
5. The prosecutor improperly commented on defendant's failure to testify at trial in violation of his Fifth Amendment right.
6. The evidence, when viewed in the light most favorable to the State, was grossly insufficient to convict on all counts, and Defendant was convicted by the use of contradictory, inconsistent, and perjured testimony.
7. Petitioner's trial counsel was ineffective and had a conflict of interest.

DISCUSSION

Sufficiency of the evidence:
When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, we first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Hampton, 98-0331, p. 13 (La.4/23/99), 750 So.2d 867, 880, cert. denied, 528 U.S. 1007, 120 S.Ct. *56 504, 145 L.Ed.2d 390 (1999).[2] Pursuant to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the standard of review is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. Louisiana Revised Statute 15:438 provides that the fact finder, when analyzing circumstantial evidence, must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83.
We first address defendant's contention that the evidence was insufficient to convict him of the firearm charges. The crux of this argument is that the testimony of Dupre, Deshotel, and McCauley was "inconsistent, contradictory, inconclusive and self-serving." Thus, the argument questions the credibility of the witnesses. The requirement that the evidence be viewed in the light most favorable to the prosecution obliges the reviewing court to defer to "[t]he actual trier of fact's rational credibility calls, evidence weighing and inference drawing." State v. Mussall, 523 So.2d 1305, 1311 (La.1988). The reviewing court is not permitted "to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." Id. It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
Thus, the jury had before it three eyewitnesses to defendant's possession of firearms. Where there is no physical evidence to link a defendant to the crime charged, the testimony of one witness, if believed by the trier of fact, is sufficient support for a factual conclusion required for a verdict of guilty. See State v. Marshall, 99-2176, p. 12 (La.App. 4 Cir. 8/30/00), 774 So.2d 244, 252. The portion of the assignment of error relating to the firearm charges is without merit; all three State witnesses testified Marcantel had possession of firearms.
We now consider defendant's argument that the evidence of his guilt of theft was insufficient. The elements of the crime of theft are (1) that there be a misappropriation or taking, (2) that the misappropriation or taking be of a thing of value, (3) that the thing belong to another, and (4) that the misappropriation or taking be with the intent to deprive the other permanently of that which is the subject of the taking. LSA-R.S. 14:67.
Defendant does not contest the fact that the testimony of the Prejeans established there had been a taking of property belonging to them of a value in excess of $500.00. The firearms introduced into evidence were direct evidence of the property that had been taken and not returned, evidencing an intent to permanently deprive the Prejeans of the guns. Thus, the elements of the crime of theft were established. However, defendant claims the evidence was insufficient to identify him as the person who actually stole the firearms.
The jury's verdict of guilty of the firearm charges shows the jury accepted the testimony of Dupre, Deshotel, and McCauley *57 that defendant possessed the Prejeans' firearms in their presence. The jury could have reasonably inferred from the defendant's possession of the firearms that he was the person who took them from the Prejean residence. This inference is reasonable because of the following proven facts: the defendant was Mr. Prejean's first cousin; the defendant was familiar with the Prejean residence; the defendant had access to information about their camping trip from his father with whom he resided; the defendant was seen with the guns in a pillow case, and a pillow case was taken from the Prejean residence at the time of the theft; the person who took the firearms left behind a handgun which had been given to Mr. Prejean by the defendant's father; one of the handguns taken in the burglary was kept loaded by the Prejeans; the same handgun was loaded the day Marcantel retrieved the stolen guns from the rural area and tossed the handgun at McCauley. Testimony established that as few as five days could have elapsed between the date of the theft and Marcantel's possession of the guns.[3] Furthermore, despite the suggestions to the jury by defense counsel throughout the trial that the three State witnesses, not defendant, had burglarized the Prejean house, there was no evidence to establish that they knew the Prejeans or anything about their home or their possessions or their comings and goings. Thus, considering the evidence in a light most favorable to the prosecution, there was sufficient proof, without any legal presumption, from which any rational trier of fact could have found the essential elements of the crime of theft were proved beyond a reasonable doubt.
The appellate court addresses the legal presumption included in LSA-R.S. 15:432: that the person in the unexplained possession of property recently stolen is the thief. The record reveals that the trial court charged the jury as follows:
Now I am going to give this special requested charge. Requested by both parties.

There is a legal presumption that the person in the unexplained possession of property recently stolen is the thief; but said presumption may none the less be destroyed by rebutting evidence. (Emphasis supplied.)
The appellate court distinguished this court's holding in State v. Fontenot, 95-2920 (La.5/31/96), 675 So.2d 271, from the factual circumstances of this case. In Fontenot, this court held that the defendant's possession of stolen goods was insufficient to prove beyond a reasonable doubt that he stole the goods; the overall evidence did not exclude the reasonable hypothesis that the defendant in Fontenot was merely a "fence" for the stolen goods and was not necessarily the thief.
We find it unnecessary to discuss the legal presumption of theft or the reasonable hypothesis of being a fence for stolen goods. The defense strategy throughout the trial was to convince the jury that the three witnesses, Dupre, Deshotel, and McCauley, burglarized the residence, and that they collaborated to "frame" Marcantel. Counsel for the defense never suggested to the jury that Marcantel could have been a fence for the stolen goods.[4] *58 Based on a review of the record, we conclude the defense requested the legal presumption charge hoping that the jury would use the presumption against the three witnesses.
We reiterate that the State and the defendant jointly moved to have the trial court instruct the jury regarding the legal presumption included in LSA-R.S. 15:432.[5] We decline to address the effect of the legal presumption in this case because the defendant cannot request a specific jury charge and then argue against the jury's response to that charge when he appeals his conviction. To entertain such an argument would allow the defendant to manipulate the judicial process by requesting a charge at trial and then arguing against its application on appeal.
Defendant's Assignment of Error No. 6, asserting insufficiency of the evidence, is without merit.

Appellate court opinion:
The defendant's other six assignments of error were dealt with by the court of appeal in a carefully considered and well-reasoned opinion. We note the court of appeal addressed the pro se arguments as well as the counseled arguments. Defendant's remaining arguments before this court lack merit. Therefore, we will not disturb the decree of the court of appeal.
DECREE AFFIRMED.
CALOGERO, C.J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissenting.
I dissent from the majority for two reasons. First, I disagree that there was sufficient evidence produced at trial to convict defendant, Steve Marcantel, of theft. Second, I find merit in defendant's argument that "the trial court improperly restricted the cross-examination of key prosecution witness Mark McCauley." In my view, defendant did not received a fair trial when his constitutional right to cross examination was restricted. For the reasons further set forth below, I respectfully dissent from the majority.

Insufficiency of Evidence of Theft
The majority states that the evidence presented at trial was sufficient to allow the jury to find that defendant committed theft. Yet, there is no direct nor circumstantial proof to support that finding. As to direct proof, no one testified that they witnessed Marcantel take the weapons; the firearms themselves did not contain the defendant's prints; and the guns were never found in defendant's possession but in the possession of others including Todd Deshotel, Rebecca Dupre and Mark McCauly (none of whom were charged by the State) who merely gave testimony that they had seen Marcantel in possession of firearms belonging to the Prejeans.
Similarly, there was no circumstantial evidence to support an inference of theft *59 by Marcantel. First, the fact that Marcantel was a cousin of the Prejeans and was familiar with the house does not make him a thief. Second, just because defendant's father knew the Prejeans were to go camping on May 11, 1997 does not mean that the defendant himself knew of that trip. There was no testimony that defendant was told of the vacation plan. Finally, the fact that a visibly inoperative .25 caliber gun, a gift to Cecil Prejean from defendant's father was not taken, does not necessarily prove that Marcantel was the thief or the burglar. Cecil Prejean admitted that the gun did not have a clip. Furthermore, other weapons besides the .25 caliber gun were left behind as well. Cecil Prejean testified that none of his shotguns were taken. The State provided no explanation as to why the defendant would not have taken the other operable weapons if he was, in fact, familiar with the Prejean home.
Finally, the jury did not find the defendant guilty of burglary yet found him guilty of theft when there was no direct proof that the defendant had committed the burglary, nor that he stole the Prejeans' weapons.
What the majority has done, in actuality, is determined that the defendant was guilty of theft based upon the presumption of La.Rev.Stat. 15:432, a presumption that the majority stated "was unnecessary to discuss." The presumption in La.Rev. Stat. 15:432 is that "the person in the unexplained possession of property recently stolen is the thief." That presumption, however, has dubious constitutional validity, see State v. Searle, 339 So.2d 1194 (La.1976)(on reh'g), but may provide a rational, permissive inference for a factfinder under the particular circumstances of the offense. State v. Johnson, 406 So.2d 153, 155-56 (La.1981).
Here, the majority has, in effect, found that Steve Marcantel is guilty based upon the presumption of La.Rev.Stat. 15:432 alone without supporting direct or circumstantial evidence. Such a holding, in my view, is a violation of basic principles of criminal law that a defendant must be proven guilty beyond a reasonable doubt. La. Const. art. 1, § 2.

The Trial Court Improperly Restricted Cross-Examination of a Key Witness
Defendant plainly asserted as an assignment of error that:
The trial court improperly restricted the cross-examination of key prosecution witness Mark McCauley as to prior arrests, deals or promises, which may have unduly influenced the witness' testimony and established bias and interests on the part of the witness in violation of defendant's Sixth Amendment right to confront and cross-examine his accusers.
The majority, however, does not discuss this assignment, finding that the court of appeal satisfactorily addressed the issue. In my view, the defendant has demonstrated that his right to cross examine was restricted and that such action constitutes reversible error.
The record reveals that during the cross-examination of Mark McCauley the defense counsel made a motion, outside of the presence of the jury, that he be permitted to question McCauley concerning his prior arrests and pending charges, in order to show bias. After hearing the arguments, the court denied the defendant's motion, finding that any questioning pertaining to Mark McCauley's prior arrests was irrelevant and inadmissible. The court of appeal agreed, finding that La. C.E. art. 609.1 limits impeachment of witnesses to convictions and not arrests or pending charges.
*60 However, the possibility that the State may have "leverage over a witness due to the witness's pending criminal charges..." is a valid and permissible area of cross-examination. State v. Rankin, 465 So.2d 679, 681 (La.1985). It is also well-settled that "a witness['s] hope or knowledge that he will receive leniency from the state is highly relevant to establish bias or interest" (State v. Brady, 381 So.2d 819, 821-22 (La.1980)), and that "a witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct." State v. Vale, 95-1230 p. 4 (La.1/26/96), 666 So.2d 1070, 1072.
During the defendant's motion for permission to question McCauley about prior arrests and pending charges, the assistant district attorney stated that Mark McCauley had been arrested just ten months prior to defendant's trial. That arrest was in connection with McCauley's allegedly having issued a worthless check. Furthermore, the district attorney conceded that McCauley had not been charged with that crime and that it was "pending."
Therefore, the defendant had a right to cross-examine McCauley regarding the worthless check charge and the consequential possibility of prosecution of this witness by the State to show bias. Because the defendant was precluded from asking such questions, his right to cross-examination pursuant to U.S. Const. Amend. 6, La. Const. art. I, § 16, and La.Rev.Stat. 15:273 was impermissibly restricted. In addition, that constitutional violation was not harmless error.

Harmless Error Analysis
The United States Supreme Court set forth a harmless error analysis in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under Chapman, an appellate court must decide "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," and "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." Chapman, 386 U.S. at 24, 87 S.Ct. at 828. Furthermore, if the error is the kind that may be deemed harmless, the burden is on someone other than the person prejudiced by it to show that it was harmless. Chapman, supra.
The Chapman standard was later refined in Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993), as follows:
Consistent with the jury-trial guarantee, the question [Chapman] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.... The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
Here, it cannot be said that the guilty verdicts rendered on the seven counts of convicted felon in possession of a firearm were surely unattributable to the trial court's restricting defendant's right to cross-examine Mark McCauley. The evidence presented at trial to prove that defendant was in the possession of the stolen firearms was marginal. The State presented no physical evidence such as fingerprints, but relied solely on the testimony of three witnesses: Todd Deshotel, Rebecca Dupre and Mark McCauley. The testimony of these three witnesses, however, is suspect.
*61 First, it was these three witnesses, not Steve Marcantel, who admitted having been in possession of some of the stolen property of the Prejeans. Second, all three admitted lying to the police during the Prejean investigation. Finally, the testimony of Rebecca Dupre and Todd Deshotel raises questions as to their ability to recall events. Rebecca Dupre stated that during May/June of 1997 when Steve Marcantel was allegedly in the possession of the stolen firearms, she mixed pain medication with alcohol, and on that day in particular, she had been drinking. She further testified that her boyfriend, Todd Deshotel, was a drug addict during May and June of 1997, had a "bad memory problem" and was drugged "very heavily" on the day Steve was seen in possession of the firearms. Todd Deshotel also admitted taking drugs in May/June of 1997 and further stated that in 1998, prior to trial, he was involved in an automobile accident which caused damage to his brain and created some memory problems.
Considering the testimony of Todd Deshotel, Rebecca Dupre and Mark McCauley, the fact that all three witnesses lied to the police during the Prejean investigation, and the rule in Chapman, supra, that "the burden of proving harmless error is on someone other than the person prejudiced by it to show that it was harmless," it cannot be said that the trial court's failure to allow the defendant to cross-examine Mark McCauley on the then viable charge for passing a worthless check was harmless. That is, it cannot be said that the guilty verdicts on the seven counts of convicted felon in possession of a firearm were surely unattributable to the trial court's restricting the defendant's right to cross-examine one of the State's key witnesses. Hence, I would reverse these convictions and remand the matter for a new trial on these seven counts.
In sum, I disagree with the majority that the evidence presented at trial was sufficient to convict Steve Marcantel of theft. In my view, the majority impermissibly relied on the presumption of La.Rev. Stat. 15:432 alone without supporting evidence, either direct or circumstantial. Second, I find merit in defendant's argument that he was restricted from cross examining a key witness. In my view, the trial court's refusal to allow defendant to cross examine Mark McCauley on the pending worthless check charge is reversible error, and not harmless.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] Detective Ortis traced a 9mm handgun from Prosper Fontenot back to McCauley. Fontenot told Ortis he got the gun from McCauley and later sold it. The 9mm handgun was never recovered.
[2] As previously mentioned, the defense filed a motion for new trial, which the trial court denied. The motion included the allegation that the verdict was contrary to the law and the evidence. See LSA C.Cr.P. art. 851(1). The denial of a motion for new trial based on Article 851(1) is not subject to review on appeal. State v. Bartley, 329 So.2d 431, 433 (La.1976). Therefore, it was proper for the court of appeal to consider the issue of sufficiency of the evidence despite the fact that no motion for post-verdict judgment of acquittal was filed, which motion would have been the proper vehicle for raising the issue. See State v. Hampton, 98-0331 at 12, 750 So.2d at 879-880.
[3] The Prejeans testified they discovered the theft on May 11. Dupre testified she saw Marcantel with the guns some time after May 15, but definitely within the month of May.
[4] Defendant confirms this observation in his pro se brief to this court:

Further, the court of appeal seems to think being a "fence" is the only reasonable hypothesis that the defendant did not steal these items. However, your Relator avers the direct and circumstantial evidence points almost exclusively to the state's witnesses. The witnesses were found in possession of these stolen items, not the defendant, and the witnesses' testimony is severely flawed.
[5] The constitutional validity of this particular presumption has been the subject of much judicial discussion. See State v. Searle, 339 So.2d 1194, 1203 (La.1976), suggesting examination of all criminal presumptions in light of contemporary constitutional safeguards. See also, State v. Johnson, 406 So.2d 153, 155 (La.1981) (presumption is constitutional when its effect is shown only to create an inference that the person in possession of recently misappropriated property was the misappropriator; the jury must be informed the defendant need not testify to explain away this circumstantial evidence any more than any other circumstantial evidence.) For discussion of this presumption in light of the distinction between mandatory presumptions and permissive presumptions, see Coleman v. Butler, 816 F.2d 1046 (5 Cir.1987).