876 So.2d 122 (2004)
STATE of Louisiana
v.
Lonnie ALLEN.
No. 2003-KA-2156.
Court of Appeal of Louisiana, Fourth Circuit.
May 19, 2004.
*124 Eddie J. Jordan, Jr., District Attorney, Nick Orechwa, Assistant District Attorney, New Orleans, LA, for Appellee, State of Louisiana.
Karen G. Arena, Louisiana Appellate Project, Metairie, LA, for Defendant/Appellant, Lonnie Allen.
(Court composed of Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.

AFFIRMED
The defendant, Mr. Lonnie Allen, was convicted on September 23, 2003, of a second degree murder committed on April 27, 1999. He is now appealing his conviction and his sentence.

STATEMENT OF THE CASE
Mr. Allen was originally indicted by a grand jury, tried before a jury, and found guilty of the second degree murder of Norman Royal. In State v. Allen, XXXX-XXXX (La.App. 4 Cir. 10/17/01), 800 So.2d 378, writ denied, XXXX-XXXX (La.9/30/02), 825 So.2d 1188, this Court reversed Mr. Allen's conviction and sentence and remanded the case to the trial court for a new trial.
A grand jury subsequently re-indicted Mr. Allen, charging him with the second degree murder of Mr. Royal. Mr. Allen pled not guilty at his arraignment.
Mr. Allen was retried before a twelve-person jury and was again found guilty of the second degree murder of Mr. Royal. Subsequently, the trial court denied Mr. Allen's motion for a new trial. On the same day that the motion was denied, Mr. Allen waived the legal delays for sentencing, and he was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. His motion for the reconsideration of his sentence was denied, but his motion for appeal was granted. The appeal is now before this Court.

STATEMENT OF FACTS
Reginald Davis and his cousin, Mr. Royal, lived in a double house located at 1802-1804 Music Street, New Orleans, Louisiana. On the evening that Mr. Royal was killed, Mr. Davis and three other men, Robert Spriggens[1], Tremaine Andrews, and Lawrence Clark, had been sitting on the porch of the Music Street residence socializing and drinking beer for a few hours. Then Mr. Royal came out of his house and jumped off the porch onto the sidewalk, because he and the group planned to go to a club.
Suddenly, three unknown men approached the group on the porch. All three of them were carrying guns, and two *125 of them were wearing bandanas to mask their identity. The unmasked man threatened Mr. Royal, grabbed him around the neck, and said, "I got you Mother F______ now. Don't nobody move." Mr. Davis realized that the three armed men wanted money, so he gave them $230 that he had in his pocket. The armed men apparently did not believe that they had been given all of the money in the group's possession, and the unmasked man hit Mr. Royal in the head with a gun. The armed men attempted to get the group to go inside the residence, but they refused to do so. One of the armed men, however, yelled, "Watch him; he bout to break into the house. He bout to run in the house." At that point Mr. Clark did, in fact, run into the house, and the unmasked gunman shot Mr. Royal. The other two gunmen then started shooting while all three gunmen were running away from the residence. Mr. Spriggens and Mr. Andrews were wounded by the gunfire.
The armed men fled in what appeared to be a red Pontiac Sunfire automobile with a defective tail light and a commercial license plate. Mr. Davis testified that he was able to observe the license plate on the car and that the license plate number began with the letter "A." Mr. Davis was also able to remember the last two digits of the number. The night that Mr. Royal was killed, Mr. Davis was driven by a police officer to a red automobile that had been stopped by the police. Mr. Davis was asked whether he could identify the automobile, and he said that it was not the getaway car.
New Orleans Police Department ("NOPD") Homicide Detective Carlton Lawless, who was the lead investigator in this case, testified at the trial regarding his investigation. He identified photographs of the crime scene, testified that he directed the crime laboratory to obtain and examine evidence such as blood and spent bullets, and said that the illumination at the crime scene that was furnished by street lights was "pretty good" and that the front porch lights were "quite bright."
Detective Lawless also testified that on the day after Mr. Royal was killed, a red vehicle was observed in the area but was never located. Within the next few days, however, a police officer who was on patrol notified Detective Lawless that a vehicle fitting the description of the getaway car had been located in the 2100 block of Desire Street in New Orleans. The officer who had spotted the vehicle determined that it was not occupied, so he put it under surveillance. While he was conducting surveillance on the vehicle, a young lady entered the vehicle and attempted to drive away. When she did this, she was stopped by the police officer.
Detective Lawless testified that the young lady, Trelia Smith, and the vehicle were both transported to the police station. Detective Lawless questioned Ms. Smith at the police station. He asked her whether the car was hers and whether she was the only person who drove the car. Detective Lawless testified that taped statements were taken from Trelia Smith and Linda Reeves. Detective Lawless stated that through his investigation he determined that Linda Reeves was Ms. Smith's mother. When he was asked whether he developed a suspect at this point in the investigation, Detective Lawless said that he had. He identified the suspect as Mr. Allen, and he further testified that "I learned through the investigation that that was here [sic] husband."[2]
*126 Detective Lawless testified that after he had developed Mr. Allen as a suspect, he showed a photographic line-up to Mr. Davis, Mr. Andrews, Mr. Spriggens, and Mr. Clark. He showed the line-up to each of the men individually, and Mr. Davis identified Mr. Allen's picture as the picture of the man who had killed Mr. Royal. None of the other men made a positive identification from the line-up.
After Mr. Davis positively identified Mr. Allen in the photographic line-up, Detective Lawless prepared an arrest warrant for Mr. Allen and a search warrant for the red vehicle driven by Ms. Smith. Pursuant to the search warrant, a number of latent fingerprints were lifted from the vehicle, but according to the testimony of NOPD Officer Terry Bunch, only one was suitable for identification. Officer Bunch, who was qualified as an expert in fingerprint examination, testified that the fingerprint that was suitable for identification did not belong to Mr. Allen or to any other person known to the police.
NOPD Detective Kevin Johnson testified at the trial that he and two other police officers went to the residence at 6122 Music Street in New Orleans to execute the arrest warrant for Mr. Allen. One of the officers knocked on the door of the residence, but there was no answer. After the officers had been outside the residence for about fifteen minutes, Ms. Smith answered the door, and she permitted the officers to enter her residence. The police officers searched the residence but did not find Mr. Allen. They then heard noises in the attic and ordered the person in the attic to surrender. After getting no response from the person in the attic, the officers summoned a police canine unit. When the unit arrived at the residence with a dog in the car, Mr. Allen surrendered to the police and was arrested. During his testimony at trial, Detective Johnson identified Mr. Allen as the person that he had arrested at 6122 Music Street.

ERRORS PATENT
A review of the record reveals that there are no errors patent.

DISCUSSION
Mr. Allen has raised three assignments of error. He maintains that the evidence presented at the trial was insufficient to sustain the verdict that was rendered. Additionally, he contends that the trial court judge committed reversible error by allowing hearsay evidence to be admitted into evidence despite his objections. Finally, Mr. Allen argues that his sentence is excessive.

Assignment of Error: The evidence is insufficient to sustain the verdict.
In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1, creates the following standard of review for federal courts reviewing a state conviction:
[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
443 U.S. at 318-19, 99 S.Ct. 2781 at 2788-89 (footnote omitted) (citation omitted).
In State v. Mussall, 523 So.2d 1305 (La.1988), the Louisiana Supreme Court stated *127 that "this court ... recognized that ... the Jackson holding also applies to state direct review of criminal convictions." Id. at 1309. The Supreme Court in Mussall also recognized that the Louisiana Constitution has a due process clause "virtually identical to its Fourteenth Amendment model. La. Const. Art. I, § 2." Id.
The Supreme Court in Mussall stated that a review of the record in a criminal case does not require the reviewing court to determine whether the reviewing court believes the evidence at the trial established guilt beyond a reasonable doubt. The Supreme Court further stated as follows:
[A] reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can. .... [T]he inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.
523 So.2d at 1309-10 (footnotes omitted). See also State v. Marcantel, XXXX-XXXX (La.4/3/02), 815 So.2d 50; State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99.
La. R.S. 14:30.1 defines second degree murder, in relevant part, as follows:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2)(a) When the offender is engaged in the perpetration or attempted perpetration of ... armed robbery ... even though he has no intent to kill or to inflict great bodily harm.
Because La. R.S. 14:24 states that "[a]ll persons concerned in the commission of a crime ... whether they directly commit the act constituting the offense ... [or] aid and abet in its commission ... are principals," all three of the individuals who committed the armed robbery in this case are equally culpable.
There is no question in this case that Mr. Royal, a human being, was killed. Also, there was overwhelming evidence, which is undisputed by Mr. Allen, that Mr. Royal was killed while three men armed with guns took or attempted to take money at gunpoint from him and four other people. Further, because the unmasked man was holding Mr. Royal's neck and pointing a gun directly at his neck, it is clear that when the unmasked man shot Mr. Royal, he intended to kill him or, at the very least, inflict great bodily harm. Mr. Allen, however, contends that Mr. Davis' eyewitness identification of him as the person who killed Mr. Royal is insufficient to support the jury's finding in this case, particularly in light of the fact that there was no physical evidence linking him or the red Pontiac Sunfire automobile to the crime.
In the Marcantel case cited above, the Louisiana Supreme Court stated that " "[w]here there is no physical evidence to link a defendant to the crime charged, the testimony of one witness, if believed by the trier of fact, is sufficient support for a factual conclusion required for a verdict of guilty." XXXX-XXXX, p. 9, 815 So.2d at 56 (emphasis added). Therefore, if, after considering all of the evidence in this case, including the eyewitness identification of Mr. Allen by Mr. Davis, we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm Mr. Allen's conviction. Additionally, in Marcantel, the Supreme Court stated that "[i]t is *128 not the function of an appellate court to assess credibility or re-weigh the evidence." Id. Therefore, we are not to disturb the jury's verdict in this case on the ground that there was insufficient evidence to convict Mr. Allen, if we find that a rational trier of fact could have reached that verdict.
In the instant case there was testimony that the crime scene was well illuminated. Mr. Davis testified that he spoke directly with the unmasked robber, asking him not to harm Mr. Royal. Therefore, Mr. Davis had an opportunity to view the robber who killed Mr. Royal. Although Mr. Davis admitted that he had been drinking beer prior to the robbery, there was no evidence that Mr. Davis was intoxicated. Further, Mr. Davis positively identified Mr. Allen at the trial as the person who killed Mr. Royal.
Mr. Davis also described the getaway car to police. His description of the getaway car closely matched certain aspects of the Sunbird that was located by the police. The getaway car was red, as was the Sunbird, the first letter of the license plate of the getaway car was "A", as was the first letter of the Sunbird's license plate, and the getaway car had some type of malfunction involving the light on the right rear of the car, as did the Sunbird. All of this supports a link between the person who killed Mr. Royal and the Sunbird that was seized.
Additionally, Mr. Allen hid in the attic when the police came to Ms. Smith's home to arrest him. This is a circumstance from which guilt may be inferred. In State v. Fuller, 418 So.2d 591 (La.1982), the Louisiana Supreme Court stated that "[f]light and attempt to avoid apprehension indicates consciousness of guilt, and therefore, is one of the circumstances from which a juror may infer guilt." 418 So.2d at 593. See also, e.g., State v. Smith, 98-2645, p. 5 (La.App. 4 Cir. 1/26/00), 752 So.2d 314, 317.
When we view all of the evidence in this case in the light most favorable to the prosecution, we find that any rational trier of fact could have found that all of the essential elements of the crime of second degree murder were present beyond a reasonable doubt. Therefore, this assignment of error is without merit.

Assignment of Error: The trial court committed reversible error in allowing inadmissible hearsay that tied Mr. Allen to the crime to be admitted over Mr. Allen's objection.
Mr. Allen contends that, despite his objection to such evidence, the trial court permitted the State to present inadmissible hearsay evidence regarding Mr. Allen's connection to the getaway car. Mr. Allen specifically argues that Detective Lawless' testimony informed the jury that Ms. Reeves was Ms. Smith's mother. The following colloquy occurred between the prosecutor and Detective Lawless:
Q. Detective, were taped statements taken of witnesses that night in reference to the red Pontiac?
A. Yes, they were.
Q. And who were the people that the statements were taken from?
A. From Trelia Smith, and Linda Reeves, that's Trelia Smith's mother.
Q. And who took Linda Reeves' statement?
A. I'll be honest with you; offhand I don't remember. I can't say if I took it or another detective. I don't know.
Q. Were you present at the Station when the statements were being taken?
A. Yes.
La. C.E. art. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the present *129 trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible evidence except as expressly provided by legislation. La. C.E. art. 802. In the instant case, we question whether the statements made by Detective Lawless regarding the relationship were, in fact, offered to prove the truth of the matters asserted, i.e., that Ms. Reeves was Ms. Smith's mother and that Ms. Smith was married to Mr. Allen. The only matters, the truth of which needed to be admitted into evidence, were the fact that a vehicle that appeared to match the description of the getaway car was located and that as a result of the vehicle being located, the police obtained information that led them to believe that Mr. Allen might be a suspect in the killing of Mr. Royal. There was no need to prove to the jury that Ms. Reeves was Ms. Smith's mother or that Ms. Smith was Mr. Allen's wife.
Even if the information regarding Mr. Allen's relationship to Ms. Reeves and Ms. Smith were inadmissible hearsay, the admission of the hearsay evidence was harmless error. In State v. Vale, 96-2953 (La.9/19/97), 699 So.2d 876, the Louisiana Supreme Court stated that in order for a reviewing court to find that an error in a case is harmless beyond a reasonable doubt, the court must find that the verdict actually rendered in that particular trial was "surely unattributable to the error." 699 So.2d at 877, citing State v. Code, 627 So.2d 1373 (La.1993) (quoting Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).
In the instant case, we find that any reference in the testimony at Mr. Allen's trial to his relationship to Ms. Reeves and Ms. Smith was not a factor in the jury's decision. The verdict of guilty of second degree murder was "surely unattributable" to the admission of the testimony concerning Mr. Allen's relationship to Ms. Reeves and Ms. Smith. The jury had ample evidence upon which to convict Mr. Allen based on the in-court eyewitness identification of Mr. Allen by Mr. Davis. Mr. Davis' identification was thoroughly scrutinized by Mr. Allen on cross-examination, and the jury chose to believe his testimony regarding his identification of Mr. Allen.
We find that the testimony to which Mr. Allen objects was not inadmissible hearsay, but even if it were, it was harmless error to allow its introduction. Therefore, we find this assignment of error to be without merit.

Assignment of Error: Under the circumstances of this case, Mr. Allen's life sentence is excessive.
Mr. Allen contends that he is serving a life sentence "based on scant, unreliable evidence that he committed the crime." He also argues that the trial court judge did not order a pre-sentence investigation and that the judge did not consider a lesser sentence.
The Louisiana Constitution expressly provides that "[n]o law shall subject any person to cruel, excessive, or unusual punishment." La. Const. art. I, § 20. Although the United States Constitution does not expressly prohibit "excessive punishment", it does prohibit "cruel and unusual punishment." U.S. Const. amend. VIII.
In State v. Baxley, 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977, citing State v. Goode, 380 So.2d 1361, 1363 (La.1980), the Louisiana Supreme Court stated that the deliberate inclusion of the prohibition against excessive sentences in the state constitution by its redactors imposed on the court the duty to review the sentencing provisions of criminal statutes. The Supreme Court further stated that the court is permitted to determine both *130 whether the statutory range of sentences and the sentence of a particular offender is excessive, even if that offender's sentence were within the prescribed statutory range. Id.
In State v. Bonanno, 384 So.2d 355 (La.1980), the Louisiana Supreme Court discussed the criteria for determining whether a sentence is unconstitutionally excessive as follows:
[T]o determine whether a certain penalty is excessive we must determine whether that penalty is grossly disproportionate to the severity of the crime. To determine whether the penalty is grossly disproportionate to the crime we must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice.
384 So.2d at 358 (citation omitted). In State v. Soco, 441 So.2d 719 (La.1983), the Supreme Court also stated that "[m]aximum sentences provided by the statutes are reserved for the `worst kind of offender'." Id. at 720, citing State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982).
Mr. Allen was convicted of second degree murder, and La. R.S. 14:30.1 provides that "[w]hoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." Mr. Allen based his argument that his sentence was excessive on the ground that he was convicted on "scant, unreliable" evidence and on the ground that the trial court did not order a presentence investigation report. We have already addressed the issue of insufficient evidence and found that the evidence presented at trial was sufficient to support Mr. Allen's conviction of second degree murder.
With respect to the presentence investigation report, there is nothing in the record to indicate that Mr. Allen requested one, and he did not object at his sentencing to the lack of a presentence investigation report. La.C.Cr. P. art. 875(A)(1) provides in relevant part that "the court may order... a presentence investigation." (Emphasis added.). The use of the word "may" in this article reflects that ordering a presentence investigation is discretionary with the trial court. In State v. Bell, 377 So.2d 275 (La.1979), the Louisiana State Supreme Court found that "[t]here is no mandate ... that a presentence investigation be ordered." Id. at 281. The Supreme Court then held that "[s]uch an investigation is an aid to the court and not a right of the accused." Id. See also, State v. Wimberly, 414 So.2d 666, 671 (La.1982).
In State v. Hayden, 98-2768 (La.App. 4 Cir. 5/17/00), 767 So.2d 732, this Court stated as follows:
In the instant matter, the record does not reflect that the defendant requested that a pre-sentence investigation be conducted... nor was any objection made at the time of sentencing. Ordering a pre-sentence investigation report is discretionary with the trial court; ... The trial court's failure to order a PSI will not be reversed absent an abuse of discretion.
[T]he defendant was sentenced to the mandatory minimum sentence of life imprisonment. The pre-sentence investigation would not have abrogated the legal obligation of the judge to impose the mandatory sentence. Under these circumstances, no abuse of discretion in the court's failure to order a PSI prior to re-sentencing can be found.
1998-2768, pp. 27-28, 767 So.2d at 748-49 (citations omitted).
*131 In the instant case, as in the Hayden case, no presentence investigation was requested, no objection to this was made at the sentencing hearing, and the trial court judge was required to impose a mandatory sentence. We find no abuse of the trial court's discretion in not ordering a presentence investigation.
There is only one way that a defendant can rebut the presumption that a mandatory minimum sentence imposed by the legislature is constitutional. The defendant must show that "because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Lindsey, 99-3256, 99-3302, p. 5 (La.10/17/00), 770 So.2d 339, 343. Mr. Allen was convicted of second degree murder, one of the gravest offenses one can commit. The circumstances of this case clearly warrant a mandatory life sentence, and a mandatory life sentence is perfectly tailored to Mr. Allen's culpability.
We find that Mr. Allen's sentence was in no way excessive. There is no merit to Mr. Allen's assignment of error on this issue.

CONCLUSION
We find no error in the judgment of the trial court. The conviction and sentence of Mr. Allen are hereby affirmed.

AFFIRMED
NOTES
[1] We note that certain of the names included in this opinion are spelled in various ways in the record.
[2] Mr. Allen's counsel objected to the testimony regarding the relationship between Mr. Allen and Ms. Smith on the ground that the testimony was hearsay.