909 So.2d 636 (2005)
STATE of Louisiana
v.
Kendall J. STEWART and Emanuel Veal.
No. 2004-KA-2219.
Court of Appeal of Louisiana, Fourth Circuit.
June 29, 2005.
Eddie J. Jordan, Jr., District Attorney of Orleans Parish, Yolanda J. King, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant, Kendall J. Stewart.
*637 Laura Pavy, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant, Emanuel Veal.
(Court composed of Judge JAMES F. McKAY III, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD).
JAMES F. McKAY III, Judge.

STATEMENT OF CASE
On October 23, 2003, the appellants Kendall Stewart and Emanuel Veal were each charged with two counts of armed robbery.[1] At their arraignment on October 27, 2003, they both pled not guilty to all charges. On April 22, 2004, the trial court denied their motions to suppress the identifications. The State tried the appellants on the two armed robbery counts on September 28-29, 2004, and at the conclusion of trial a twelve-person jury found both the defendants guilty of the responsive verdicts of two counts of first-degree robbery. On October 8, 2004, the trial court sentenced Kendall Stewart and Emanuel Veal, on each count, to serve fifteen years at hard labor without benefit of probation, parole or suspension of sentence, the sentences to run concurrently. The court also granted their motions for appeal on that date. Although the State filed a multiple bill against Mr. Stewart, apparently on March 3, 2005, the court ruled that the State failed to prove the allegations in the bill.

FACTS
Aimee Bonneval and Amanda Hofstetter were robbed inside Ms. Bonneval's apartment just before midnight on August 9, 2003. Ms. Bonneval testified that she and Ms. Hofstetter had arrived at the apartment a short time before the robbery, and they settled onto a sofa in the living room to watch television while drinking beer. Ms. Bonneval stated that they heard a loud noise, and then the front door flew open and two men rushed into her apartment. Ms. Bonneval identified Kendall Stewart as the first man to come into the apartment and Emanuel Veal as the second man. She testified that the men yelled at the two women to turn around so that they would not be facing them, but Ms. Bonneval was able to see the men's faces because when she turned around she faced a mirror, from which she could observe the robbers. She stated that both men were carrying small handguns. When the men noticed that she was watching them in the mirror, they ordered her and Ms. Hofstetter to put their heads down with their faces toward the sofa. Ms. Bonneval testified that when the men demanded the women's purses, she gave them hers, while Ms. Hofstetter pointed to her purse, which was lying nearby. Ms. Bonneval stated that the robbers had guns to both women's heads. She testified that Mr. Stewart then went through the apartment looking for things to take, while Mr. Veal stayed with the women. She testified that Mr. Stewart ordered her to tell him the location of her money and jewelry, and she replied that she did not have any. He then asked for her telephone, and she told him she only had a cell phone. She stated that Mr. Stewart and Mr. Veal turned out the lights in the apartment and left, threatening to shoot the women if they walked out of the door to the apartment.
Ms. Bonneval testified that the lights had been on during the entire robbery, and she was able to get a good look at both men's faces. She stated that she gave to the police descriptions of the two men: *638 the first man who came through the door was approximately 5'10" tall, weighed about 160 pounds, and was wearing jeans and a blue and white jersey; the second man was approximately 5'6" tall, weighed about 140 pounds, and was wearing jeans and a white t-shirt. She stated that some days later a police officer showed her two photographic lineups. She testified she chose no one from the first lineup, but she chose Mr. Veal's photo from the second one. Later she was shown a third lineup, from which she chose Mr. Stewart's photo.
Ms. Bonneval admitted that she did not know for sure that Mr. Stewart was the man who searched the apartment because she had her head down on the sofa, but she assumed he was the one who did so. She testified that although the only time she saw the second robber's face was his reflection in the mirror, she was able to get a good look at both him and the first man who came through the door. She maintained that she was certain the two robbers were Mr. Stewart and Mr. Veal.
Ms. Hofstetter testified that she was sitting on the sofa when the two robbers burst into the apartment. She said that she got a good look only at the shorter of the two while he was still standing out on the lighted porch after the first man entered. She testified that she could not make a positive identification from any of the photo lineups, but in one lineup she narrowed her choices down to two men after looking at the lineup for a long period of time, and she made a tentative identification of those two men, one of which was Mr. Veal.
Detective Steve Mortell testified that he conducted a follow-up investigation of the robbery, during which he came up with three suspects: Mr. Stewart, Mr. Veal, and Mr. Junius Jackson. He testified he showed Ms. Bonneval three photographic lineups. From the first, which contained photos of both Mr. Stewart and Mr. Jackson, she chose no one. When he showed her a lineup with Mr. Veal's photo, she chose Mr. Veal's photo. He later showed Ms. Bonneval another lineup from which she chose Mr. Stewart's photo. Detective Mortell testified that he showed Ms. Hofstetter only the lineup containing Mr. Veal's photograph because she had indicated that she only noticed the second robber's face. He testified that Ms. Hofstetter was only able to make a tentative identification from this lineup in that she was only able to narrow her choice to two men, one of which was Mr. Veal.

DISCUSSION

ERRORS PATENT/KENDALL VEAL'S ASSIGNMENT OF ERROR

THREE
A review of the record reveals there are no errors patent.
The State argues that the appellant Kendall Stewart is procedurally barred from taking an appeal from his conviction and sentence because he did not move to reinstate his appeal after the trial court found there was no basis for the multiple bill filed against him. In support, the State cites to a footnote in Mr. Stewart's brief wherein he reserved the right to appeal any adjudication and sentence as a multiple offender. The State argues that because Mr. Stewart did not reiterate his intent to appeal his conviction and sentence once the trial court found him not to be a multiple offender, he lost his right to appeal.
This claim has no merit. Although the transcript of sentencing ends before either of the defendants moved for an appeal, the record contains a notice of appeal, signed by the minute clerk for the section of court wherein Mr. Stewart was convicted and sentenced, which notes that the trial court *639 granted an appeal for both defendants on the day of sentencing. Contrary to the State's argument, Stewart had no obligation to reiterate his intent to appeal his conviction and sentence once the trial court found he was not a multiple offender. Thus, this court may consider his claims on appeal.

REMAINING ASSIGNMENT OF ERROR
By the defendant, Kendall Stewart's only assignment of error and defendant Emanuel Veal's first assignment, they contend that there was insufficient evidence to support their convictions. They do not argue that the robbery did not occur; rather, they both argue that the evidence did not prove that they were the robbers.
In State v. Brown, XXXX-XXXX (La.4/12/05), p. 12, 907 So.2d 1, 18, the Court set forth the standard for determining a claim of insufficiency of evidence:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." State v. Neal, 00-0674, (La.6/29/01)[,] 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
See also State v. Sykes, XXXX-XXXX (La.App. 4 Cir. 3/9/05), 900 So.2d 156.
The appellants were convicted of two counts of first degree robbery, which is defined by La. R.S. 14:64.1 as: (1) a taking; (2) of anything of value belonging to another or in the immediate control of another; (3) by force or intimidation; (3) where the offender leads the victim reasonably to believe that the offender is armed with a dangerous weapon. See State v. Simmons, 99-1154 (La.App. 4 Cir. 12/6/00), 779 So.2d 856. The appellants acknowledge that the evidence proved that Ms. Bonneval and Ms. Hofstetter were victims of a first-degree robbery. They insist, however, that the evidence did not prove beyond a reasonable doubt that they were the perpetrators.
When identity is disputed, the State must negate any reasonable probability of misidentification in order to satisfy its burden under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893; State v. Woodfork, 99-0859 (La.App. 4 Cir. 5/17/00), 764 So.2d 132. The reviewing court must examine the reliability of an identification according to the test set out in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977):(1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. See State v. Brealy, 2000-2758 (La.App. 4 Cir. 11/7/01), 800 So.2d 1116.
Here, Mr. Stewart argues that his identification by Ms. Bonneval, the only person to identify him, was suspect and did not prove his guilt beyond a reasonable doubt. He argues that Ms. Bonneval was able to observe him for only a short time, and her identification of him was tentative. He also points out that there was no physical evidence tying him to the robbery.
However, Detective Mortell testified that Ms. Bonneval positively identified Mr. *640 Stewart as one of the perpetrators. Admittedly there was some confusion in Detective Mortell's testimony leading one to believe that Ms. Bonneval could not make a selection between Mr. Stewart's photo and that of another person in the lineup, but further reading shows that he had confused that lineup with the one containing Mr. Veal's photo that he showed to Ms. Hofstetter. Detective Mortell specifically stated that Ms. Bonneval chose photo # 6 in Mr. Stewart's lineup, which was Mr. Stewart's photo. He then testified that he showed Ms. Hofstetter the lineup containing Mr. Veal's photograph, and from that lineup Ms. Hofstetter was unable to make a positive identification, only narrowing her choices to Mr. Veal (# 5) and another man (# 6). Although Ms. Bonneval did not identify Mr. Stewart in the first lineup where his photo was included with another suspect, she positively identified him in another lineup shown to her a few days later. Detective Mortell testified that approximately two weeks had elapsed from the robbery by the time Ms. Bonneval identified Mr. Stewart. Detective Mortell also admitted that Ms. Bonneval made the identification only after studying the lineup.
Considering the first of the Manson factors, Ms. Bonneval testified that she saw Mr. Stewart as he burst through her door, and she was able to observe him for a bit longer because she could see his face in the mirror after she turned away at his order. With respect to the second factor, her degree of attention was focused. Contrary to Mr. Stewart's argument, both victims testified that they had just opened the beers they were drinking when the robbers entered the apartment. Ms. Bonneval insisted that she had had nothing to drink that night prior to opening that beer. It is unknown if Mr. Stewart resembled the description Ms. Bonneval gave to the police, but the jurors were able to observe him and decide whether he fit the description she gave. As for the fourth factor, Ms. Bonneval did not choose Mr. Stewart's photograph from the first lineup and was able to do so from the later one only after viewing the lineup for five minutes. However, at trial she positively identified him as the first robber to come through her door. Approximately two weeks elapsed between the robbery and her identification.
Mr. Stewart points out that Ms. Bonneval's head was down during most of the robbery and she was uncertain which robber roamed around the apartment looking for property to steal. She was also unclear on what type of guns the robbers were carrying. However, the fact that she could not see which robber searched her apartment does not negate the fact that she saw the face of the first robber who came through her door, which she positively identified at trial as Mr. Stewart.
Mr. Stewart refers to testimony at a suppression hearing, which indicated that one of the victims' cars was stolen, and fingerprints found in the car were not matched to his. However, this evidence was not presented at trial, and this court may only consider the evidence presented at trial in determining whether the evidence supported the appellants' convictions. In addition, the facts that there was no physical evidence linking him to the robbery and that he was not found with any evidence taken during the robbery does not defeat his convictions. As the Supreme Court noted in State v. Marcantel, XXXX-XXXX, p. 9 (La.4/3/02), 815 So.2d 50, 56: "[w]here there is no physical evidence to link a defendant to the crime charged, the testimony of one witness, if *641 believed by the trier of fact, is sufficient support for a factual conclusion required for a verdict of guilty." See also State v. Allen, 2003-2156 (La.App. 4 Cir. 5/19/04), 876 So.2d 122.[2]
Considering the five Manson factors, it appears the State presented sufficient evidence of identification to allow the jury to find beyond a reasonable doubt that Mr. Stewart was one of the men who robbed Ms. Bonneval and Ms. Hofstetter. Mr. Stewart's sufficiency claim has no merit.
Likewise, the evidence was sufficient to support Mr. Veal's convictions. Ms. Bonneval positively identified Mr. Veal both at trial and from the photo lineup as the second robber. She testified that she was able to see his face in the mirror after he entered the apartment. The above discussion of the other Manson factors applies to her identification of Mr. Veal as well. As with Mr. Stewart, the jurors were able to determine for themselves if Ms. Bonneval's description of the second robber matched that of Mr. Veal. In addition, Ms. Hofstetter could not positively identify Mr. Veal in the photo lineup, but she tentatively identified his and another man's photos from the lineup. At trial, she testified that she could see the second man's face while he was still on the porch because of the porch light.
Mr. Veal additionally argues that the identifications were suspect because only six photographs were used in his lineup. He does not indicate, however, how many photographs should have been included in each lineup. He also argues that the fact that Ms. Hofstetter could only make a tentative identification should have cast doubt on Ms. Bonneval's identification of him. However, viewing the Manson factors, it appears there was sufficient evidence for the jury to find beyond a reasonable doubt that Mr. Veal was the second robber to enter the apartment. Mr. Veal's sufficiency claim also has no merit.
Mr. Veal also argues that the trial court erred by imposing excessive sentences for his convictions. However, this claim has not been preserved for appeal. As per La.C.Cr.P. art. 881.1, a defendant must file a motion to reconsider sentence within thirty days of sentencing in order to preserve for appeal any claim as to sentencing. In addition, this Court has held that the failure to file a motion to reconsider sentence or to object to the sentence at the time it is imposed precludes a defendant from raising a claim about his sentence on appeal. State v. Rodriguez, XXXX-XXXX (La.App. 4 Cir. 2/14/01), 781 So.2d 640; State v. Tyler, 98-1667 (La.App. 4 Cir. 11/24/99), 749 So.2d 767.
Here, the sentencing transcript shows no objection to Mr. Veal's sentence. In addition, there is no indication in the record that he filed a motion to reconsider his sentence. As such, he is precluded from raising this claim on appeal.
Accordingly, we affirm Kendall Stewart's and Emanuel Veal's convictions and sentences.
AFFIRMED.
NOTES
[1] Mr. Veal was charged with an additional count of first-degree robbery. There is no indication that a trial was held on this count.
[2] Writ den. XXXX-XXXX (La.11/19/04), 888 So.2d 194.