|
 
 STATEMENT of case
 

 Judge MICHAEL E. KIRBY.
 

 Roger Richards was indicted for aggravated kidnapping, aggravated anal rape, aggravated rape by oral penetration, attempted aggravated vaginal rape, and armed robbery. He pled not guilty. Evidence was taken on defense motions to suppress evidence and statements and even though Mr. Richards was charged by grand jury indictment, he received a preliminary hearing. The trial court denied the defense motions and found probable cause. At trial, after voir dire, the State
 
 *600
 
 dismissed the attempted vaginal rape charge. The following day, the jury returned responsive verdicts of guilty of two counts of forcible rape, and one count of simple robbery. They acquitted Mr. Richards of aggravated kidnapping.
 

 The court sentenced the defendant to fifteen years at hard labor on each count of forcible rape and to five years at hard labor for simple robbery. All sentences are to be served concurrently.
 

 Mr. Richards’s motion for appeal was granted. In this court he argues that the trial court violated his constitutional right to confront his accuser when it permitted an investigator to testify that the victim had identified him a photographic lineup. Because we find the victim was present at the trial and |2subject to examination on the issue of the photographic identification we find no error in the court below and affirm his conviction and sentence.
 

 STATEMENT OF FACT
 

 The victim, K.P.
 
 [1]
 
 , was walking along Galvez Street near Music Street. A young man, later identified as the defendant, rode past her on a bicycle. Richards slowed the bicycle, came back around to the victim and asked whether they knew each other. K.P. told him no, but Richards got off the bicycle, came up to her, and said, “I do know you. I know you”. K.P. replied, “No. You don’t know me,” and walked off. Richards grabbed her arm, dragged her into the garage of an adjacent abandoned house and held her against the wall. As he was pulling her into the structure, K.P. dropped her purse, phone, and sunglasses.
 

 While facing her, Richards tried to pull KP.’s pants down. She fought back and tried to get away, but he started hitting her in the face with his fist. Then he turned her around and penetrated her anally.
 

 As K.P. began to pull up her pants up and walk away, Richard’s said, “No,” and he demanded that she suck his penis. K.P. resisted, but Richards pulled out a pocket knife, held it to her side, and forced his penis into her mouth. She vomited.
 

 From a window inside the garage, Richards saw a police car traveling on Galvez. At the same time, K.P.’s phone started ringing. Richards grabbed the phone and left.
 

 |3K.P. straightened her clothes, retrieved her purse, and went outside where the police saw her. She was crying and upset. She told the officers what happened and they took her to the hospital.
 

 K.P. denied knowing Richards or giving him her phone number a month earlier. She was positive that she was not assaulted by her boyfriend. From the witness stand, K.P. identified Richards as her attacker.
 

 Sergeant Arthur P. Stubbs, of the National Guard, testified that while on patrol on Music Street heading towards Galvez he saw a man come out from a house, get on a bicycle, and dart around the corner. The man was some seventy-five yards away, and Stubbs did not observe any of his physical characteristics.
 

 Turning left onto Galvez Street, Stubbs spotted a young woman walking down the street. She was crying, her hair was messed up, and she had vomited on herself. Stubbs and his partner stopped to see what was wrong, and the woman told them that she had just been raped. Stubbs alerted the NOPD dispatcher that he had encountered a possible rape.
 

 
 *601
 
 Detective Mathew Riles and Sergeant James Kelly, of the New Orleans Police Department Sex Crimes Unit, were assigned to investigate the case.
 

 Detective Riles arrived on the scene shortly after the crime was reported. Riles observed tear stains on KP.’s face from where she had been crying. Her appearance was one of general disarray: She had dirt on her face and clothes, her hair was messed up, she had scratches on her arms, and she had vomit on her shirt.
 

 Detective Riles identified some crime scene photographs depicting the location of the assault. He related that there was a small alcove on the lower right side of the abandoned house where one could not be seen from the street. Riles | ¿identified a photograph of the victim’s broken sunglasses that were recovered at the scene. Although the area was searched, no knife was recovered.
 

 Detective Riles explained that Richards became a suspect after the investigation revealed that the victim’s phone was still being used. He and Sergeant Kelly obtained phone records to determine who was being called from KP.’s cell phone. Kelly and Riles visited these locations to try to identify who was using the phone. At one location Kelly was referred to Richards’s grandmother. Upon finding Richards’s grandmother, he learned the defendant’s identity and location.
 

 Sergeant Kelly and two detectives proceeded to Richards’s house. He was seated on the sofa in the front room, and his mother pointed to him. At that moment, Richards got up and quickly moved his arms behind his back. Concerned by Richards’s movements, Kelly grabbed him, and noticed that the object behind his back was a cell phone. He recognized it as the same type as the victim’s phone. Kelly then dialed his own phone from the recovered phone and saw that it was the victim’s number.
 

 The detectives advised Richards of his rights and transported him to the police station. There, he gave a statement saying that on the day of the rape he ran into a girl he previously knew who attacked him and dropped her phone. He explained that he picked up the phone and then rode away on his bicycle.
 

 Detective Riles compiled a photographic lineup containing a picture of Roger Richards. He presented the lineup to K.P., and she pointed to Richards’s photograph and identified him as “probably the person” who raped her
 

 Ms. Cora Jean Holland, a registered nurse and certified sexual assault examiner, was called by the State. Ms. Holland testified that she performed a |sphysical examination of K.P. where she discovered a small abrasion on K.P.’s forehead, and some point tenderness on her head. The examination revealed significant tears to K.P.’s anus. Holland explained that when there is anal penetration it is very common to have tears.
 

 Kawonda Williams testified for the defense. She stated that on the day in question she was talking to Mr. Richards at the corner of Music and Tonti Street. Williams knows Richards because her stepfather is his uncle. She stated that Richards received a telephone call from K.P., whom she knows. K.P. was a block away at the time. Richards then went to see what she wanted. Ms. Williams stated that the two talked for a while and then walked away together. Ms. Williams related that later, Richards came back, but she did not speak with him.
 

 Roger Richards testified in his own behalf. His testimony mirrored that of Ka-wonda Williams. He stated that when he came up to K.P. to see what she wanted,
 
 *602
 
 she began asking him why he had not called her. Richards believed that K.P. thought Kawonda Williams was his girlfriend. Richards stated that K.P. started pushing him, and that he pushed her back. She stumbled and dropped her phone, and he picked it up and walked away.
 

 ERRORS PATENT
 

 The defendant was sentenced to fifteen years at hard labor on each count of forcible rape. La.R.S.14:42.1 requires that at least two years of the sentence be served without benefit of probation, parole or suspension of sentence. This condition was not imposed by the trial court and thus constitutes an error patent.
 

 However, La. R.S. 15:301.1(A) provides that where the statutory restrictions are not recited at sentencing, they are deemed contained in the sentence, whether or 16not actually imposed by the sentencing court.
 
 State v. Williams,
 
 2000-1725 (La.11/28/01), 800 So.2d 790. Hence, we need take no action to correct the trial court’s failure to specify that the first two years of defendant’s sentence must be served without benefit of parole, probation or suspension of sentence. The correction is statutorily effected.
 
 State v. Comena,
 
 2002-1562 (La.App. 4 Cir. 3/19/03), 843 So.2d 464.
 

 ASSIGNMENT OF ERROR
 

 Mr. Richards argues that he was deprived of his Sixth Amendment
 
 [2]
 
 right to confrontation and that allowing Detective Riles’s photo line up testimony was a violation of
 
 Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In
 
 Crawford,
 
 the United States Supreme Court held that testimonial hearsay statements by an unavailable witness may be admitted as evidence at a criminal trial only when the defendant has had a prior opportunity to cross-examine the declar-ant.
 
 [3]
 
 While the essential holding of
 
 Crawford
 
 prohibits admission of statements made to police officers by an unavailable witness when 17the defendant did not have an opportunity to cross examine the witness, the Court also made clear that the Confrontation Clause has no place in circumstances where the declarant is present at trial to defend or explain his previous statement. The Court stated:
 

 Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use
 
 *603
 
 of his prior testimonial statements.
 
 See California v. Green,
 
 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). It is therefore irrelevant that the reliability of some out-of-court statements “cannot be replicated, even if the declarant testifies to the same matters in court.”
 
 Post,
 
 [124 S.Ct.] at 1377
 
 (quoting United States v. Inadi,
 
 475 U.S. 387, 395, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)). The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.
 

 Crawford,
 
 541 U.S. at 59, n. 9, 124 S.Ct. 1354 (Emphasis added).
 

 K.P. did not testify regarding her previous identification of the defendant.
 
 [4]
 
 Although K.P. had already testified when Officer Riles testified regarding the identification, she was nevertheless still under subpoena and available to testify if defendant had exercised his right to examine her about the identification. Because K.P. was present at the trial, Mr. Richards cannot claim that his Sixth Amendment right to confront K.P. was violated.
 

 We have considered whether Officer Riles’s testimony about the photo lineup was inadmissible hearsay, but, this argument also fails. Article 801(C) of the Louisiana Code of Evidence defines hearsay as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in | ^evidence to prove the truth of the matter asserted.” Even so, La. C.E. art. 801(D)(1)(c) provides that a statement is not hearsay if it is “[o]ne of identification of a person made after perceiving the person” when the witness “testifies at the trial or hearing and is subject to cross-examination concerning the statement.” In
 
 State v. Stokes,
 
 2001-2564 (La.9/20/02), 829 So.2d 1009, the Court explained that such a statement may be introduced as direct evidence, stating:
 

 Such a statement may be used assertively, as substantive evidence of guilt, and may be established through the testimony of one to whom the statement was made. This is so even if the witness denies making an identification or fails or is unable to make an in-court identification.
 
 State v. Johnson,
 
 99-3462, pp. 2-3, 774 So.2d 79, 80-81. The federal rule is similar. See Fed.R.Evid. 801(d)(1)(C);
 

 Id.,
 
 2001-2564, p. 1, 829 So.2d at 1010.
 

 Accordingly, any argument that KP.’s identification statement was inadmissible hearsay is without merit. The statement was one of identification; K.P. testified at the trial, remained under subpoena following her testimony, and she was subject to cross examination, had the defendant so chosen. The assignment of error lacks merit.
 

 CONCLUSION
 

 For the reasons given above we affirm Mr. Richards’s conviction and sentences.
 

 AFFIRMED.
 

 [1]
 

 . In accordance with La. R.S. 46:1844(W)(l)(a), initials of the victim are used in order to protect her identity.
 

 [2]
 

 . The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him”. U.S. Const, amend. VI. There is no opportunity for confrontation when an assertion by one party is presented through the testimony of another party.
 

 [3]
 

 . In
 
 State v. Kennedy,
 
 2005-1981 (La.5/22/07), 957 So.2d 757, the Louisiana Supreme Court explained the significance of
 
 Crawford
 
 as follows:
 

 Traditionally, for purposes of the Confrontation Clause, all hearsay statements were admissible if (1) the declarant was unavailable to testify, and (2) the statement fell under a "firmly rooted hearsay exception” or bore "particularized guarantees of trustworthiness.”
 
 Ohio v. Roberts,
 
 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). But the United States Supreme Court recently overruled Roberts insofar as it applies to out-of-court statements that are "testimonial” in nature.
 
 See, Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 1369-1374, 158 L.Ed.2d 177 (2004). The Crawford Court held that the "adequate indicia of reliability” standard set forth in Roberts is too amorphous to adequately prevent the admission of "core testimonial statements that the Confrontation Clause plainly meant to exclude." Crawford, supra. The Court held that testimonial hearsay statements may be admitted as evidence at a criminal trial only when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant.
 
 Id.
 

 2005-1981, pp. 25-26, 957 So.2d at 775-776.
 

 [4]
 

 . The prosecutor explained that she had not planned on introducing the photo lineup or raising the subject until the question of whether the victim had identified the deten-dant in a photographic lineup was raised by defense counsel during cross examination of Sergeant Kelly.