DANIEL L. DYSART, Judge.
| defendant, Dale Lambert, appeals his conviction by an Orleans Parish jury of second degree murder and his sentence of life imprisonment without the benefit' of parole, probation or suspension of sentence. For the reasons that follow, we affirm.
PROCEDURAL BACKGROUND
On August 22, 2013, Dale Lambert was indicted for the second degree murder of Bernard .Santiago, a violation of La. R.S. 14:30.1. , After entering a plea of not. guilty, Mr. Lambert filed motions to suppress the evidence, statements and identification, all.of which were denied on May 8, 2014. A jury trial took place .from March 2, 2014 through March 4, 2014 and, by a verdict of ten to two, the jury found Mr. Lambert guilty of second degree murder. After his motion for new trial was denied on April 8, 2015, Mr. Lambert was sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.
This appeal followed.
12FACTUAL BACKGROUND
On March 22, 2013, Bernard Santiago was shot and killed near the. intersection of Orleans Avenue and Galvez Street in New Orleans, Louisiana. According to an eyewitness, Aana Cain, who had been walking with her two nieces along Orleans Avenue at the time, observed three males were *732 walking-quickly as though something was going to happen.” She then heard gunshots and saw one of the men run from around the corner, having been shot in the leg. She saw another man lying on the ground who appeared to be deceased. She did not see the third man at that time, although when shown a picture at trial of Mr. Lambert, she identified him as the third man. A couple of weeks after the incident, Ms. Cain met with a detective to whom she gave a recorded statement. At that meeting, the detective showed Ms. Cain a lineup of six photographs and Ms. Cain positively identified Mr. Lambert as the third man she had seen on March 22, 2013.
The man who had been with Mr. Santiago and was shot in the leg on March 22, 2013 was Kerry Jones, a cousin of Mr. Santiago.[1] Mr. Jones testified at trial that, on that date, he and Mr. Santiago were “hanging out” in the area of Orleans Avenue and Galvez Street. Mr. Jones admitted that Mr. Santiago was looking to buy some heroin. The two were approached by a third person, who advised that he “had something on him” and he asked that they follow him. Mr. Santiago began talking with the other man, as Mr. Jones stayed a bit behind talking on the phone and acting as a lookout for police cars.
IsThe three turned onto St. Ann Street and at that point, instead of producing drugs, the third man pulled a handgun from his waistband, shot Mr. Santiago three times and then turned to Mr. Jones and shot at him, striking him in the leg. Mr. Jones ran m the opposite direction of the shooter towards an area where there were a lot of people.[2]
The police arrived shortly after the shootings and Mr. Jones described the shooter to the officer. He again described the shooter when he was interviewed by another officer at the hospital. Later, Mr. Jones was shown a photograph lineup from which he was unable to make an identification. The following day, however, he was shown another lineup and he identified Mr. Lambert as the shooter. He explained that the photograph from the second lineup was clearer than the first.
At trial, Mr. Jones was shown the same picture of Mr. Lambert that had been shown to Ms. Cain and Mr. Jones identified him as the man who had shot him and Mr. Santiago. He likewise identified Mr. Lambert in the courtroom during trial, indicating that he was certain that Mr. Lambert was the man who shot him and Mr. Santiago.
Detective Mike McCleary, a member of the Homicide Section of the New Orleans Police Department (“NOPD”), was the lead detective on the case. He was called to the scene and made contact with Ms. Cain and Mr. Jones, from whom he later obtained recorded statements, including descriptions of the shooter. A couple of days after the incident, he obtained surveillance video footage from a nearby Lbusiness that captured both of the victims and a third person.[3] Detective McCleary explained to the jury that the video surveillance, which was shown to the jury, *733 depicted Mr. Jones and Mr. Santiago walking down the street, with Mr. Lambert following the two.
Detective McCleary obtained a still frame photograph from the video and placed it on the news. Thereafter, the NOPD received an anonymous call and learned the identity of the man in that still photograph — Mr. Lambert.
A photograph lineup was then shown to Mr. Jones and Detective McCleary confirmed that Mr. Jones was unable to make a positive identification in the first lineup. A second lineup was shown to him and Mr. Jones identified Mr. Lambert with 65% certainty. Ms. Cain, too, identified Mr. Lambert as. the perpetrator with 90% (“nine out of ten”) certainty. Detective McCleary obtained a warrant for Mr. Lambert’s arrest and Mr. Lambert was ultimately arrested by the Violent Offender Squad.
According to Detective McCleary, he obtained the telephone number of Mr. Lambert’s phone from Mr. Lambert and issued a subpoena for the records associated with that number.[4] From- those telephone records, it was determined that' Mr. Lambert’s telephone pinged off of a cell tower that was approximately half a mile from the scene at the time of the shooting.
The surveillance video shows that "Mr. Lambert had dreadlocks on March 22, 2013. However, at the time of his arrest, Mr. Lambert had cut his hair. ’ Iñ a recorded interview with Officer McCleary, Mr. Lambert explained that he cut his hair because he was required to do so because of work requirements and the fact |fithat his photograph had been publicized.[5] Detective McCleary was unable to verify from Mr. Lambert’s employer that its employees were required to cut their hair.
DISCUSSION[6]
ASSIGNMENT OF ERROR NUMBER 1
In.his.first assignment .of errors,, Mr. Lambert maintains that the evidence as a whole was insufficient to prove beyond a reasonable doubt • that he was guilty of second degree murder, particularly because there was no physical evidence linking him to the shooting. ■ He also argues that Mr. Jones was distracted at the time of the shooting and later only identified Mr. Lambert .with 65% certainty. He further maintains that* the State did not bear its burden of proving his identity as the perpetrator and that the State failed to negate the reasonable probability of mis-identification by its witnesses.
In reviewing whether the evidence presented in a case is sufficient to support a conviction, we- are governed by the standard .enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and consistently followed by Louisiana courts. This. Court recently reiterated the applicable standard of review for sufficiency of evidence claims in State v. White, 14-0397, p. 16 (La.App. 4 Cir. 7/29/15), 174 So.3d 177, 188:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable .to the prosecution, any rational trier, of fact could *734 have found the defendant.guilty beyond ^reasonable doubt. Jackson, v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757, 758 (La.App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305, 1311 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s Anew of all the evidence most favorable to the prosecution must be adopted. The factfinder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. See Mussall, supra; Green, supra. “[A] reviewing court is' not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith; 600 So.2d 1319, 1324 (La.1992).
“Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury.” State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18; State v. Armstead, 11-1344 (La.App. 4 Cir. 7/25/12), 98 So.3d 891, 894, writ denied, 12-1881 (La.3/8/13), 109 So.3d 355.
We are reminded that “[i]t is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.” State v. Webb, 13-0146, p. 15 (La.App. 4 Cir. 1/30/14), 133 So.3d 258, 269, writ denied, 14-0436 (La.10/3/14), 149 So.3d 793. Indeed, it is well settled that credibility determinations are questions of fact “-within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence.” Id., 13-0146, pp. 15-16, 133 So.3d at 269. Moreover, unless there is internal contradiction or irreconcilable conflict -with the physical evidence, the testimony of a single witness, if believed by the fact finder, is sufficient to support a. factual conclusion. State v. Marshall, 04—3139, p. 9 (La.11/29/06), 943 So.2d 362, 369; State v. Robinson, 10-0885, pp. 7-8 (La.App. 4 Cir. 12/21/10); 54 So.3d 1208, 1213.
“[W]hen the key issue is the defendant’s identity as the perpetrator, rather than vvhether the crime was committed, the State is required to negate any reasonable probability of misidentification.” State v. Weary, 03-3067, p. 18 (La.4/24/06), 931 So.2d 297, 311, quoting State v. Neal, 2000-0674, p. 11 (La.6/29/01), 796 So.2d 649, 658. Again, a “positive identification by only one witness is sufficient to support a conviction.” Id. .
Second degree murder is defined by La. R.S., 14:30.1 A(l) as “the killing of a human being ... [wjhen the offender has a specific intent to. kill or to inflict great bodily harm.” Specific criminal intent is defined by La. R.S. 14:10(1) as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” Specific intent may be inferred from the circumstances and actions of the defendant and can be formed in an instant. See State v. Williams, 05-0459, p. 14 (La.App. 4 Cir. 1/18/06), 925 So.2d 567, 575; State v. McElveen, 10-0172, p. 20 (La.App. 4 Cir. 9/28/11), 73 So.3d 1033, 1052. Moreover, specific intent to kill can be inferred from the intentional use of a deadly weapon. State v. Rivers, 14-0511 (La.App. 4 Cir. 2/25/15), 160 So.3d 1108, 1111, citing State v. Byrd, 12-0556, pp. 2-3 (La.6/5/13), 119 So.3d 801, 803; State v. Johnson, 08-1488, *735 p. 10 (La.App. 4 Cir. 2/10/10), 33 So.3d 328, 333.
In this case, while Mr. Lambert contends that his identity as the shooter was not sufficiently proven, we find that the State presented overwhelming evidence to the contrary. We need only look to the testimony of Mr. Jones who was present at the scene and was, himself, shot by Mr. Lambert. While he admitted that, when he jswas shown a photograph lineup, he was only 65% sure of his identification of Mr. Lambert as the shooter, he explained that, at that time: “I was really one hundred percent sure, but I said sixty-five percent because I hadn’t decided that I wanted, you know, to testify, or you know, or, do a little street justice.”
More importantly, at trial, Mr. Jones testified that he was certain that it was Mr. Lambert who shot Mr. Santiago. He stated: “I was right there when I got shot. I know who shot me. That guy sitting right there shot me. Ain’t no doubt about that.” He again reiterated that there was “no doubt in [his] mind” that Mr. Lambert was the person that shot him and Mr. Santiago.
Other evidence corroborated Mr. Lambert’s presence at the scene of the shooting. .First, the State introduced the surveillance video of the scene which showed Mr. Lambert walking along with Mr{ , Santiago and Mr. Jones shortly before the shooting. Mr. Lambert admitted in his recorded interview, after being given his Miranda rights, that it was, indeed, him in the photograph from the surveillance video. Second, Ms. Cain identified Mr, Lambert with ninety percent certainty as the man walking with Mr. Santiago and Mr. Jones moments before the shooting. Likewise, Mr. Lambert’s cell phone records placed him around that -scene at the time of the shooting.
■ Thus, viewing-the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found Mr. Lambert guilty of second degree murder beyond a reasonable doubt.
ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, Mr. Lambert contends that the trial court committed reversible error in “allowing a police officer to testify about his knowledge of information ..'. that was derived from testimonial statements in ^violation of ... his right to confront his accusers;” More specifically, Mr. Lambert argues that the trial court erred in allowing Detective MeCleary to testify about whát he learned from Mr. Lambert’s place of employment as to why'he cut his hair after the incident. Mr. Lambert had filed a motion in limine prior to trial; however, that motion did not expressly address the particular statements concerning Detective McCleary’s investigation of Mr. Lambert’s employer. Rather, the motion simply sought to exclude witness identifications from “one or more pictures from the photographic array.” He maintained that these statements “are testimdnial hearsay.”
At the hearing on the' motion in limine held on the first day of trial,[7] the trial court ruled that, because. Mr. Lambert did not except to any particular statement the State was attempting to introduce, the defense would have to object at trial to statements it sought to exclude should they arise.
During the course of trial, when Detective MeCleary. was questioned about his *736 having spoken with persons from -Mr. Lambert’s employment, his' attorney objected to this line of questioning as seeking “hearsay [of] a .testimonial nature.” Mr. Lambert argues that, because the persons with whom Detective McCleary spoke were not called to testify at trial, he was not able- to cross-examine them and thus, his Sixth Amendment rights were violated, as prohibited by the United States Supreme Court in' Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
The Sixth Amendment’s Confrontation Clause provides that, “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with th.e hnwitnesses against him.” .Louisiana’s counterpart is found in Article I, § 16, which states, in pertinent .part, that “[a]n accused is entitled to confront and .cross-examine the witnesses against him, to compel the. attendance of witnesses, to present a defense, and to testify in his own behalf.” Under Crawford, testimonial hearsay statements may be made only when a witness is unavailable and only when a defendant has had. a prior opportunity to cross-examine the witness. See State v. Richards, 10-0247 p. 6 (La.App. 4 Cir. 8/18/10), 47 So.3d 598, 602.
In his recorded interview, Mr. Lambert was questioned as to why he cut his hair and he indicated he cut his dreadlocks about a week after the incident because of the publicity of his picture being shown on the news and because he “couldn’t go back to work looking like that” and. so, “they told [him] to cut [his] hair.” At trial, the following exchange took place:
Q. Now, the defendant, Mr. Lambert, indicated that — and I’m going to try to quote, as best I can — he couldn’t go back to work looking like that, .because y’all had publicized him, so he was told to cut his hair.
A. Correct;
Q. Did you do any follow-up in connection with him saying he was told by his place of employment to cut his hair? ,
])Ir. Matthews (defense counsel): Objection, Your Honor. The response is going to call for hearsay.
■ Q. Without saying what anybody told you, did - you do any- follow-up to determine' whether he was told, or instructed by -his place. of employment to cut his hair?
A. Yes. ■ '
[[Image here]]
|nQ. Were you given any protocol, or any documentation from that place, Emerald’s [sic], documenting any protocol that they have that..requires employees to cut their hair? , ■
A. I don’t believe so.
Q. So, there1 was nothing given to you or shovm to you which would demonstrate that he' wás required at any point to cut his hair in connection with his employment?
A. No, it was verbal answers from'the Manager and Kitchen Manager, I believe.
’ While no objection was raised about the aforementioned ' questions as posed, even assuming that the' answers given by Detective McCleary contained inadmissible hearsay, our jurisprudence reflects that “confrontation errors are subject to a harmless eiror analysis.” State v. McElveen, 10-0172, p. 7l (La.App. 4 Cir. 9/28/11), 73 So.3d 1033, 1079. This Court noted, in State v. Legendre, 05-1469, pp. 9-10 (La.App. 4 Cir. 9/27/06), 942 So.2d 45, 52, quoting State v. Wille, 559 So.2d 1321, 1332 (La.1990):
The correct inquiry is whether the reviewing court, assuming that the damag *737 ing potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt.... Factors ■to be considered by the reviewing court include “the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of. course, the overall strength of the prosecution’s case.”
In this matter, Detective McCleary did not identify the persons from whom he learned that Mr. Lambert’s employer required that he cut his hair. Nor were those unidentified employees shown to be unavailable for trial. However, given Mr. Jones’ testimony and his positive identification of Mr. Lambert at trial as the |]2man who shot Mr. Santiago (and him) we find that the jury’s verdict was not attributable to Detective McCleary’s testimony, even if it was hearsay.[8] ’ Accordingly, the admission of Detective McCleary’s testimony, even if erroneous, was harmless error. We find no merit to this assignment of error.
ASSIGNMENT OF ERROR NUMBER 3
Mr. Lambert next argues that the trial court erred in sentencing him to life imprisonment, where the jury’s .verdict was not unanimous. Mr. Lambert concedes that a trial judge has wide discretion in sentencing but argues, without citing any supporting case law, that “[a] life sentence without the possibility of parole on a less than unanimous jury verdict violates the equal protection clause of the Constitution of the United States.” He likewise argues that his sentence “shocks the sense of justice and is grossly out of proportion to the severity of the offense.”
Article I, § 20 of the Louisiana Constitution provides, in part, that “[n]o law shall subject any person to .... unusual punishment.” Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against' excessive punishment. State v. Francis, 96-2389, pp. 6-7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 676; State v. Robinson, 11-0066, p. 17 (La.App. 4 Cir. 12/7/11), 81 So.3d 90, 99. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks Lathe sense of justice. State v. Baxley, 94-2982, p. 10 (La.5/22/95), 656 So.2d 973, 979.
Our case law indicates that when an excessive sentence claim is raised, the relevant question on appellate review is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462. The reviewing court may not aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D). See also, Robinson, 11-0066, 81 So.3d at 99. “An appellate court reviewing an excessive sentence claim must determine whether the trial court adequately complied with the statutory sentencing guidelines set forth in La.C.Cr.P. art. *738 894.1,[9] as well as whether the particular circumstances of the case warrant the sentence imposed.” State v. Boudreaux, 11-1345, p. 5 (La.App, 4 Cir. 7/25/12), 98 So.3d 881, 885, writ denied sub nom. 12-1907 (La.11/9/12), 100 So.3d 841 (Citations omitted.).
Second, degree murder carries a sentence of life imprisonment. Under La. R.S. 14:30.1 D, “[w]hoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.” (Emphasis added.). See also, State v. Williams, 13-0283, p. 33 (La.App. 4 Cir. 4/23/14), 137 So.3d 832, 857, writ denied, 14-1231 (La.1/16/15), 157 So.3d 1128 (“La. R.S. 14:30.1 ... carries a mandatory sentence of life imprisonment at hard labor, without benefit of parole, , probation, or suspension |uof sentence.”). In Williams, we noted that “[t]he assertion that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been rejected.” Id. See also, State v. Smith, 49,839, p. 13 (La.App. 2 Cir. 5/20/15), 166 So.3d 416, 423-24.
This Court has, however, recognized that there is “only one way that a defendant can rebut the presumption that a mandatory minimum sentence imposed by the legislature is constitutional.” State v. Allen, 03-2156, p. 14 (La.App, 4 Cir. 5/19/04),'876 So.2d 122, 131. Namely, a “defendant must show that ‘because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.’ ” Id., quoting State v. Lindsey, 99-3256, 99-3302, p. 5 (La.10/17/00), 770 So.2d 339, 343.
in the instant matter, Mr. Lambert failed to articulate any reason why his case is exceptional so that he would be entitled to a downward departure from the mandatory minimum sentence. Nor has Mr. Lambert cited any case law for the principle that a sentence of life imprisonment after a conviction by a non-unanimous jury violates the equal protection clause of the constitution. Our jurisprudence is replete with cases in which a defendant, convicted of second degree murder by a non-unanimous jury, was sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence. See, e.g., State v. Hankton, 12-0375 (La.App. 4 Cir. 8/2/13), 122 So.3d 1028, writ denied, 13-2109 (La.3/14/14), 134 So.3d 1193, and cert. denied, — U.S.-, 135 S.Ct. 195, 190 L,Ed.2d 152 (2014); State v. Smith, 49,839 (La.App, 2 Cir. 5/20/15), 166 So.3d 416; State v. Barnett, 46,303 (La.App. 2 Cir. 5/18/11), 70 So.3d 1; State v. Juniors, 05-649 (La.App. 3 Cir. 12/30/05), 918 So.2d 1137; State v. Shanks, 97-1885 (La.App. 1 Cir. 6/29/98), 715 So.2d 157.
Mr. Lambert was convicted of .the second degree murder of Bernard Santiago, one of the most serious and heinous crimes one can commit. The circumstances of this case clearly warrant a mandatory life sentence, and we find that a mandatory life sentence is tailored to Mr. Lambert’s culpability. The sentence is, accordingly, neither grossly disproportionate nor shocking to the sense of justice. We find no merit to this assignment of error.
*739 ASSIGNMENT OF ERROR NUMBER 4
In his fourth assignment of error, Mr. Lambert maintains that the trial court erred in denying his pretrial motion for a unanimous jury verdict. He again argues that a non-unanimous jury verdict which subjected him to life imprisonment without the benefit of parole, probation or suspension of sentence violates the Sixth Amendment to the Constitution and also violates the Fourteenth Amendment.[10]
Mr. Lambert acknowledges that, under Louisiana law, a defendant may legally be convicted and sentenced hard labor on a less than unanimous jury verdict. ' Indeed, Louisiana Constitution Article I, § 17(A) and La.C.Cr.P. art. 782(A) provide that a case “in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict.” Under Louisiana law, only capital offenses require a unanimous verdict of twelve jurors.[11]
| ifiThis issue is not new to the Court. The arguments made by Mr. Lambert were considered and rejected by this Court in State v. Mack, 12-0625, pp. 4-5 (La.App. 4 Cir. 5/6/15), 162 So.3d 1284, 1287-1288, as follows:
In this assignment of error, defendant argues that La.C.Cr.P. art. 782(A)4 is unconstitutional under the Sixth and Fourteenth Amendments to- the U.S. Constitution'“to the extent that it allows for a non-unanimous verdict for second degree murder.” In the present matter, defendant was convicted by a non-unanimous verdict of eleven to one. In support. of this position, defendant calls Louisiana the “only place in the nation where a defendant can be sentenced to life without parole as a result of a conviction by a non-unanimous jury.”
[[Image here]]
... [0]ur present jurisprudence provides that non-unanimous verdicts in noncapital felony cases do not violate the Sixth, and Fourteenth Amendments. Defendant makes no persuasive .argument that non-unanimous verdicts in noncapital felony cases calling for mandatory life sentences without parole upon conviction call for a different result. Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); McDonald v. City of Chicago, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010)(recognizing Apodaca continuing viability); State v. Bertrand, 2008-2215 (La.3/17/09), 6 So.3d 738; State v. Curtis, 2011-1676 (La.App. 4 Cir. 3/13/13), 112 So.3d 323. Accordingly, this assignment of error is without merit.
Id. (Footnote omitted).
Mr. Lambert argues that a body of case law following Apodaca establishes a right to unanimous jury verdicts in all criminal cases and, in particular, in eases which could result in life imprisonment because a non-unanimous jury clearly ^establishes reasonable doubt among the jurors. He does not address, however, the clear body *740 of case law which has rejected his arguments.
In State v. Bertrand, 08-2215, 08-2311 (La.3/17/09), 6 So.3d 738, the Louisiana Supreme Court held non-unanimous jury-verdicts were not unconstitutional. It noted that La.C.Cr.P. art. 782 “withstands constitutional scrutiny,” and it refused to assume that the United States Supreme Court’s “still valid determination that non-unanimous twelve-person jury verdicts' are still constitutional may someday be overturned.” Id., 08-2215, p. 8, 6 So.3d at 743. See also State v. Barbour, 09-1258, p. 16 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, 1151, cert. denied, 562 U.S. 1217, 131 S.Ct. 1477 (2011), (where defendant argued that a non-unanimous jury verdict violated the Fifth, Sixth and Fourteenth Amendments, this Court noted that “Bertrand is disposi-tive of defendant’s argument'in this assignment of error which we find is merit-less.”); State v. Frith, 13-1133, pp. 18-19 (La.App. 4 Cir. 10/22/14), 151 So.3d 946, 957 (“The defendant has failed to meet his burden of proving either that La. Const. art. I § 17(A) or La.C.Cr.P. art. 782(A) is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment, insofar as providing non-unanimous jury verdicts, or that his convictions by non-unanimous jury verdicts were similarly unconstitutional.”).
Based on the foregoing, there is no merit to Mr. Lambert’s fourth assignment of error.
ASSIGNMENT OF ERROR NUMBER 5
In his final assignment of error, Mr. Lambert contends that the trial court erred in denying his motion for new trial. His argument is three-fold: (1) that the trial court improperly allowed evidence of the attempted murder- of Mr. Jones; (2) that the prosecutor made comments in closing argument which assumed facts not |1sin evidence; and (3) that the trial court improperly overruled challenges of jurors for cause based on their'expressed biases in favor of police officers. Mr. Lambert maintains that these alleged errors prevented him from receiving a fair trial. We address each argument separately.
Prior to the commencement of trial, the prosecution severed the attempted second degree murder count from trial. Counsel for Mr. Lambert then filed a motion in limine seeking to prevent the prosecution from offering evidence of the attempted second degree murder of Mr. Jones. The trial court ruled that the prosecution would not be allowed to introduce evidence of the charge of attempted second degree murder but noted that the circumstances, because they’re so intertwined the Court cannot preclude mention, discussion, or introduction of evidence in that respect. We find no abuse of discretion in that ruling. See State v. Wright, 11-0141, pp. 10-11 (La.12/6/11), 79 So.3d 309, 316 (“A trial court’s ruling on the admissibility of evidence is reviewed for an abuse of discretion.”).
As a general rule, a court may not admit evidence of other crimes to show a defendant is a person of bad character who has acted in conformity with his bad character. , La. C.E. art. 404. However, under La. C.E. art. 404 B(l) evidence of other crimes, wrongs, or acts may be introduced when it relates to conduct that “constitutes an integral part of the act or transaction that is the subject of the present proceeding.” When another crime constitutes an integral part of the act, it is admissible as res gestae evidence. As we previously noted, the Supreme Court:
“... has interpreted the res gestae exception broadly, concluding that the exception includes ‘not only spontaneous utterances and declarations made before or after the commission of the crime, but *741 also testimony of witnesses and police officers pertaining to what they 113heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances.’ ”
State v. Falkins, 12-1654, p. 20 (La.App. 4 Cir. 7/23/14), 146 So.3d 838, 851, quoting State v. Colomb, 98-2813, pp. 3-4 (La.10/1/99), 747 So.2d 1074, 1075-76.
The Louisiana Supreme Court, in State v. Taylor, 01-1638, pp. 10-11 (La.1/14/03), 838 So.2d 729, 741, quoting Colomb, 98-2813, p. 3, 747 So.2d at 1076, explained res gestae:
Res gestae events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence “to insure that the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.”
* ⅛ #
In addition, as this court recently observed, integral act (res gestae) evidence in Louisiana incorporates a rule of narrative completeness without which the state’s case would lose its “narrative momentum and cohesiveness, ‘with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.’ ”
(Internal quotations omitted).
In this matter, the evidence of. Mr; Jones’ shooting was clearly part of and integral to the prosecution’s narrative of the events surrounding Mr. Santiago’s murder. ’.As such,- there can be no question that the shooting of Mr. Jones was so connected in both time- and location to Mr, Santiago's murder so as to be1 res gestae evidence,-which was admissible at trial. We find no merit to Mr. Lambert’s argument.
lanWith respect to the issue concerning closing argument, Mr. Lambert points to several statements made by the prosecutor'that'assumed facts not in evidence. Those include that Mr. Lambert hid the gun, got rid of his clothing and cut his hair to avoid detection; he also complains about the' prosecutor’s comments that there were two "eyewitnesses who saw him commit the crime and that Mr. Lambert was‘unable to state his whereabouts after he was seen on the surveillance video.
Under La.C.Cr.P. art. 774, closing “argument shall be confined 'to evidence admitted, to the lack of evidence, to conclusions of fact that the ‘ state or defendant may draw therefrom, and to the law applicable to the case.” That statute further provides that the “state’s rebuttal shall be confined to answering the argument of the defendant.”
In assessing whether a prosecutor’s closing argument goes beyond the boundaries of Article 774, this Court has noted:
Even where a prosecutor’s- argument has-exceeded the scope of art.-774 or is deemed to be improper, a reviewing court should- credit the good sense and fairmindedness of the jurors who have heard the evidence. State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703; [State v. Clark, [01-2087, p. 15 (La.App. 4 Cir. 9/25/02), 828 So.2d 1173, 1183], State v. Ricard, 98-2278, 99-0424 (La. App. 4 Cir. 1/19/00), 751 So.2d 393. In addition, “a reviewing.court will not re *742 verse a conviction unless ‘thoroughly convinced’ that the argument influenced the^ jury and contributed to the verdict.” Clark, at p; 15, 828 So.2d at 1173. See also State v. Draughn, 2005-1825 (La,1/17/07), 950 So.2d 583; [State v.] Casey, supra [1999-0023 (La.1/26/00), 775 So.2d 1022]; State v. Wilts, 2008-1441 (La.App. 4 Cir. 12/16/09), 28 So.3d 554. As the Court noted in Draughn: “Mistrial is a drastic remedy, and the determination of whether prejudice to the defendant has resulted from the prosecutor’s comments lies, in the sound discretion of the trial judge. State v. Leonard, 2005-1382, p. 11 (La.6/16/06), 932 So.2d 660, 667. Moreover, a trial judge has broad discretion in controlling the scope of closing |21 argument. State v. Prestridge, 399 So.2d 564, 580 (La. 1981).” Draughn, 950 So.2d at 614.
State v. Jones, 10-0018, p. 9 (La.App. 4 Cir. 11/10/10), 51 So.3d 827, 833.
During the closing argument, counsel for Mr. Lambert objected only once, and only during the prosecutor’s rebuttal argument, when the prosecutor mistakenly referred to Mr. Lambert’s having “kill[ed] two witnesses.” When the objection was lodged, the trial court corrected the prosecutor by stating, “So [Ms. Prosecutor], one witness was murdered,” to which she replied, “Excuse me.” We find no reversible error in the prosecutor’s misstatement. It did not prejudice Mr. Lambert as all evidence at trial clearly reflected that he shot and killed only Mr. Santiago. Likewise, the trial court immediately called attention to the prosecutor’s misstatement, and the jury was well aware the only' charge against' Mr. Lambert was the second degree murder of Mr. Santiago. We are not “thoroughly convinced” that this' one mistaken comment influenced the jury or contributed to the verdict.
As to any other comments made by the prosecutor of which Mr. Lambert now complains, no objection was raised at trial. . Under La.C.Cr.P.- art. 841 A, “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of- occurrence.” It is well-settled that “[a] defendant must make a contemporaneous objection in order to preserve an alleged error for review.” State v. Celestine, 12-1541, p. 11 (La.App. 4 Cir. 12/18/13), 131 So.3d 947, 955, writ denied, 14-0158 (La.8/25/14), 147 So.3d 699, citing State v. Carter, 589 So.2d 1212, 1214 (La. App. 4th Cir.1991). Because counsel for Mr. Lambert made no objection at the time of the prosecutor’s alleged improper comments, he failed to | ^preserve any argument as to those statements, and he cannot raise any claim on appeal.
Mr, Lambert's final argument is that, because the ;trial. court erroneously overruled his challenges to jurors for cause, he was forced to exercise peremptory challenges to excuse jurors who were biased in favor of police officers.
Our review of the record indicates that Mr. Lambert’s counsel objected to three potential jurors for cause, on the basis that those potential jurors indicated their belief that a police officer would be a more credible witness than a lay witness. Those jurors were questioned further by the State and the defense in the judge’s chambers with regard to this belief and none indicated that he/she would automatically afford more credenee to the testimony given by a police officer. The prospective jurors stated that they would give the testimony of all witnesses equal weight and would look at the testimony of each witness individually in order to determine whether their testimony was worthy of belief: Moreover, each of the three prospective jurors clarified that an officer’s credibility would be judged in the same *743 manner as any other witness. Ultimately, the defense withdrew its challenge as to one of the jurors and failed to object when the trial judge denied the defense challenge as to the other two jurors,'
Under La.C.Cr.P. art. 800 A;
A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, .unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be. stated at the time of objection.
Because Mr. Lambert’s counsel failed to contemporaneously object to the trial court’s denials of his challenges to those two jurors, that claim is not preserved for our review. We note, though, that even if those challenges were | ^before us, the trial court did not improperly rule on Mr. Lambert’s challenges for cause. As the Louisiana Supreme Court has indicated, “a prospective juror’s seemingly prejudicial response is not grounds for an automatic challenge for cause, and a trial judge’s refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence.” State v. Kang, 02-2812, p. 5 (La.10/21/03), 859 So,2d 649, 653.
Here, while the prospective jurors initially indicated that they would view police officers’ testimony more favorably than that of lay witnesses, they ultimately expressed responses to the trial court’s questioning indicating that they could fairly evaluate the credibility of all the witnesses, and judge them equally. Accordingly, there was no abuse of the trial court’s discretion in denying Mr. Lambert’s challenges of the jurors for cause.
CONCLUSION
For the foregoing reasons, we affirm Mr. Lambert’s conviction and sentence.
AFFIRMED

. Mr. Jones’ first name is spelled in different manners throughout the record; we refer to him as “Kerry,” as that is the manner in which it is spelled in the Docket Master.

. The evidence adduced at trial indicated that both Mr. Jones and Mr. Santiago were witnesses to the 2012 murder of Christopher Lambert, apparently a cousin of Dale Lambert, and both had given information to the police in connection with that murder. Neither Mr. Jones nor Mr. Santiago was a suspect in the murder of Christopher Lambert.

.The surveillance video also captured Ms. Cain and her two nieces.

. Mr. Lambert was using the telephone when the photograph shown to Ms. Cain and Mr. Jones was taken.

. Notably, Mr. Lambert was given Miranda warnings before any questioning took place and answered in the affirmative when asked whether he "wanted to speak with Detective McCleary.

.As .is our customary practice, we have reviewed the record for errors patent and found none.

. Even at the motions hearing, while defense counsel argued about the inadmissibility of "testimonial statements made to police officers," he only specifically addressed those statements' concerning the identifications from the photograph lineup.

. Again, a "victim’s ,.. testimony alone is usually sufficient to support the verdict.” State v. Dorsey, 10-0216, p. 43 (La.9/7/11), 74 So.3d 603, 634.

. La.C.Cr.P. art.' 894.1 sets forth sentencing guidelines. Some courts have held that “[w]here there is a mandatory sentence, there is no need for the trial court to justify, under art. 894.1, a sentence it is legally required to impose." State v. Smith, 49,839, p. 13 (La. App. 2 Cir. 5/20/15), 166 So.3d 416, 423; State v. Wright, 42,956, p. 22 (La.App. 2 Cir. 3/5/08), 978 So.2d 1062, 1076.

. The Fourteenth Amendment states, in relevant part, .that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.” U.S. Const, amend. XIV § 1.'

. Louisiana Code of Criminal Procedure article 782 A states that ”[c]ases in which punishment may be capital shall be tried by a jury' of twelve jurors, all of whom must concur to render a verdict.” Similarly, La. Const. Ann. art. I, § 17(A) provides that "[a] criminal case in which the punishment may bq capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict.”